PAUL ALSTON                    1126
KRISTIN HOLLAND                10063
MAILE OSIKA                    9826
ALSTON HUNT FLOYD & ING
1001 Bishop Street, Suite 1800
Honolulu, HI  96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
E-mail:  palston@ahfi.com
         kholland@ahfi.com
         mosika@ahfi.com

LOUIS ERTESCHIK               5241
MATTHEW C. BASSETT            6643
HAWAI`I DISABILITY RIGHTS CENTER
1132 Bishop Street, Suite 2102
Honolulu, HI  96813
Telephone: (808) 949-2922
Facsimile: (808) 949-2928
E-mail:  louis@hawaiidisabilityrights.org
         mattbassettesq@gmail.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| J. E., through his parent SUZANNE EGAN, for themselves and on behalf of a class of those similarly situated, and the HAWAI`I DISABILITY RIGHTS CENTER, in a representative capacity on behalf of its clients and all others similarly situated, <br><br>        Plaintiffs, <br><br>        vs. | CIVIL NO. _____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; SUMMONS** <br><br> **[CLASS ACTION]** |

11656-1

PATRICIA MCMANAMAN, in her
official capacity as Director of
the State of Hawai`i,
Department of Human Services;

      Defendant.

## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### PRELIMINARY STATEMENT

1.    This is a class action for injunctive and declaratory relief to establish the rights of Plaintiff J.E. (hereafter "J.E." or "Plaintiff") and all Hawai`i children under the age of 21 with an Autism Spectrum Disorder (an "ASD") who receive Medicaid services but cannot receive medically appropriate critical applied behavioral analysis treatment (hereinafter referred to as "ABA") at the expense of  the Hawai`i Department of Human Services (hereafter "DHS" or "the Department") in violation of the Medicaid Act.

2.    As Medicaid recipients under the age of 21, Plaintiff J.E. and the Class are entitled to a broad scope of early and periodic screening, diagnostic and treatment (hereafter "EPSDT") services under the Medicaid Act.

3.     DHS is the state department responsible for administering Medicaid in Hawai`i. In a manner common to all class members, DHS has excluded ABA and other behavioral health treatments from Medicaid coverage despite the Medicaid Act's requirement that services necessary to correct or ameliorate a physical or mental condition, be provided under EPSDT.

4.     By its refusal to cover the cost of ABA treatment under Medicaid, DHS has unlawfully denied critically needed healthcare to children with ASD. As a result, these children are less likely to reach their full developmental capacity and are more likely to be institutionalized as adults.

5.     Plaintiff J.E., a Hawaii Medicaid recipient, is a 5 year old boy diagnosed with severe Autistic Disorder, an ASD. As a result of his condition, J.E. has serious behavioral and developmental problems and needs extensive behavioral services, particularly ABA treatment.  Due to DHS's denial of ABA treatment coverage under Medicaid, J.E.'s mother, Suzanne Egan (hereafter "Ms. Egan"), has been forced to pay out-of-pocket for J.E.'s necessary ABA treatment. Ms. Egan can no longer sustain the expense of private treatment.

6.     This is a class action to establish the rights of J.E. and the Class of similarly situated children he seeks to represent to obtain coverage of ABA treatment under Medicaid.

7.     As set forth below, the Defendant's denial of ABA coverage for the treatment of ASDs violates the Medicaid Act and deprives J.E. and the Class of their rights.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights) as well as 42 U.S.C § 1983 (civil action for deprivation of rights).

9.     Venue is proper in the District of Hawai`i pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiffs' claim occurred in this District.

## RIPENESS

10.     There is currently an actual controversy between Plaintiffs and Defendant that is ripe for adjudication as to whether DHS is required to provide ABA as a covered treatment to children with ASD under Medicaid.

## THE PARTIES

## PLAINTIFFS

11.   Plaintiff J.E. is a 5 year old child diagnosed with ASD and a Medicaid recipient. He sues through SUZANNE EGAN, his mother and lawful guardian. Both J.E. and Ms. Egan live in Honolulu, Hawai`i.

12.   The HAWAI`I DISABILITY RIGHTS CENTER (hereafter "HDRC") brings this action in a representative capacity on behalf J.E. and all similarly-situated constituents who have been diagnosed with the disability of ASD. Each such constituent has been harmed by Defendant's denial of coverage for medically necessary ABA and other behavioral treatments under Medicaid.

13.   HDRC is a Hawai`i Domestic Nonprofit Corporation, registered in the State as of July 7, 1977.  HDRC's offices are located at 1132 Bishop Street, Suite 2102, Honolulu, Hawai`i. HDRC's purpose is to protect and advocate for the human, legal and civil rights of people with disabilities.

14.   HDRC has standing to maintain this action on behalf of its constituents and their parents who are members of the proposed Class for the following reasons:

a.     Under Federal Law, HDRC is a Protection and

Advocacy System established in Hawai`i with the authority to

pursue legal, administrative, and other appropriate remedies or

approaches to ensure the protection of, and advocacy for, the rights

of individuals within the State who are disabled or mentally ill (42

U.S.C. §§ 10803, 10805, 15043, and 29 U.S.C. § 794e);

b.     ASD is a legally recognized disability. *See* 34

C.F.R. § 300.8(c)(1).

c.     Although HDRC has no formal "members," it

has the functional equivalents of members for purposes of

associational standing.  HDRC's functional membership consists of

those individuals with disabilities and their families who are the

beneficiaries of HDRC's activities and who have many of the indicia

of membership, including: representation on HDRC's Board of

Directors; representation on the Protection and Advocacy for

Individuals with Mental Illness Advisory Council (PAIMI); and the

right to exercise a grievance procedure to assure that they have

access to the Protection and Advocacy system (29 U.S.C. § 794e(f),

42 U.S.C. § 10805(c)(1)(B), and 42 U.S.C. § 10805(a)(6)(B-C));

d.    Many of the beneficiaries of HDRC's services and activities – disabled individuals and their families – would have standing to sue in their own right for the services sought in this Action;

e.    the interests HDRC seeks to protect in this lawsuit are germane to its purpose and mission; and

f.    this Action does not require the participation of individual members in the lawsuit with respect to the claims asserted or the relief requested.

## DEFENDANTS

15.    Defendant PATRICIA MCMANAMAN ("McManaman") is the Director of the State of Hawai`i, Department of Human Services ("the DHS"). She is sued in her official capacity.

16.    Defendant McManaman has acted and continues to act at all times relevant in her official capacity under color of state law.

17.    The DHS is the government agency responsible for administration of the Medicaid program in Hawai`i.

## FACTUAL ALLEGATIONS

18.   Autism disorder is the most common condition in a group of developmental disorders known as the autism spectrum disorders ("ASD"). Autistic children have difficulty with social interaction, emotional, and communication skills. They exhibit repetitive behaviors or narrow, obsessive interests.  These behaviors can range in impact from mild to disabling. There is no known cure for autism. However, therapies and behavioral interventions are designed to remedy specific symptoms and can bring about substantial improvement. Such behavioral intervention treatment is critical in early, formative years of a child's life. *See*, "*Facts About ASD,*" Centers for Disease Control and Prevention, http://www.cdc.gov/ncbddd/autism/facts.html.

19.   Without proper care, treatment, and therapy, autism can be a debilitating and entirely disabling condition, leading people to grow into adulthood without the ability to perform the most basic of human functions and activities of daily living. Many autistic individuals are institutionalized as adults.

20.   ABA treatment encourages positive behaviors and discourages negative behaviors in order to improve a variety of skills

and helps children with ASD perform functions they would not otherwise be able to accomplish. With ABA treatment, children with ASD have the opportunity to lead more independent and active lives. *See*, http://www.cdc.gov/ncbddd/autism/treatment.html. Therapies and behavioral interventions such as ABA are scientifically valid, medically accepted, and mainstream treatments for ASD supported by decades of research and application. *See Id.*

21.   ABA treatment programs provide children with scientifically validated medical treatments tailored to their individual needs and are critical since no other effective treatment exists for children with ASD.  Regular ABA or other intensive behavioral treatment, particularly at a young age, may result in the maximum reduction of physical and mental disabilities for children with ASD and restoration to the best possible functional level. Thus, ABA treatment is rehabilitative, with both medical and remedial components. *See* 42 U.S.C. § 1396d(a)(13).

22.   In Hawai`i, an estimated 1,500 – 1,900 children under the age of 21 have been diagnosed with ASD, a large percentage of those children are Medicaid recipients. *See* "Autism Spectrum Disorders and Mandated Benefits Coverage in Hawai`i,"

Hawai`i Legislative Reference Bureau Report (2013),

http://lrbhawaii.info/reports/legrpts/lrb/2013/hcr177_sd1_12.pdf

23.   ABA treatment reduces the likelihood that an

individual diagnosed with ASD will become institutionalized as an

adult. Therefore, the public cost of providing ABA to Medicaid

recipients under 21 is outweighed by the savings to the public by

not paying to institutionalize them for the rest of their lives. *See Id.*

24.   Hawai`i participates in the federal Medicaid

program. *See* Hawai`i State Plan Under Title XIX of the Social

Security Act Medical Assistance Program,

http://humanservices.hawaii.gov/reports/hawaii-medicaid-state-

plan/ ("Hawai`i State Plan").

25.   The Medicaid Act (Title XIX of the Social Security

Act, 79 Stat. 286 (1965), codified at 42 U.S.C. § 1396 et seq.),

mandates that states who volunteer to receive federal funding for

their Medicaid programs must comply with the Medicaid Act and its

implementing regulations.

26.   At a federal level, the Medicaid Act is administered

by the Secretary of Health and Human Services ("HHS"), who in

turn, exercises authority through the Centers for Medicare and Medicaid Services ("CMS").

27.   States that participate in Medicaid must submit a state plan to HHS for approval and any changes thereafter must be approved by CMS. *See* Hawai`i State Plan.

28.   By taking federal funds for its Medicaid program, the State is <u>required</u> to provide early and periodic screening, diagnostic and treatment ("EPSDT") services to all Medicaid eligible children under the age of 21. 42 U.S.C. § 1396a(a) (10) & (43); 42 U.S.C. § 1396d(a)(4)(B); and 42 U.S.C. § 1396d(r).

29.   In accordance with the EPSDT mandate, the State must provide any listed service under the Medicaid Act even if the service is not in the State's Medicaid Plan for adults. 42 U.S.C. § 1396d(r)(5)("such other necessary healthcare, diagnostic services, treatment, and other measures...to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the state plan."). These services include any of those listed in 42 U.S.C. § 1396d(a)(1)-(29).

30.    The ESPDT mandate thus requires the State to provide preventative services such as "other diagnostic, screening, and rehabilitative services, including...(C) any medical or remedial services (provided in a facility, a home, or other setting) recommended by a physician or other licensed practitioner of the healing arts within the scope of their practice under State law, for the maximum reduction of physical or mental disability and restoration of an individual to the best possible functional level." 42 U.S.C. § 1396d(a)(13).

31.    Among those services which can be covered under § 1396d(a)(13) are medically necessary behavioral health services, such as ABA. *See* CMS, "*Clarification of Medicaid Coverage to Children With Autism*," http://www.medicaid.gov/Federal-Policy-Guidance/Downloads/CIB-07-07-14.pdf ("CMS Clarification, 2014").

32.    The ESPDT mandate also requires the State to provide services of other licensed practitioners such as "medical care, or any other type of remedial care recognized under State law, furnished by licensed practitioners within the scope of their practice as defined by State law." 42 U.S.C. § 1396d(a)(6).

33. Included among those services which can be covered under § 1396d(a)(6) are behavioral services provided by psychologists, applied behavioral analysts, and other licensed mental health providers who offer remedial care to persons with ASD. *See* CMS Clarification, 2014.

34. The ESPDT mandate also requires the State to provide therapy services. 42 U.S.C. § 1396d(a)(11).

35. Included among these are services for individuals with speech, hearing and language disorders—such as diagnostic, screening, preventative, or corrective—if prescribed by a physician or other licensed practitioner and provided by or under the direction of a qualified therapist. *See* 42 C.F.R. § 440.110; *See also* CMS Clarification, 2014.

36. The State is required to make all treatments described in § 1396d(a) available to correct or ameliorate defects, and physical and mental illnesses and conditions discovered by the EPSDT screening services but may place appropriate limits based on what the state finds to be a medical necessity. 42 USC § 1396a(a)(17); 42 C.F.R. § 440.230(d).

37.   The CMS recently clarified that ABA and other behavioral treatments are reimbursable under the Medicaid EPSDT program for children with ASD if they are medically necessary and that they may be characterized as services of other licensed practitioners (§ 1396d(a)(6)), preventative services (§ 1396d(a)(13)), or therapy services (§ 1396d(a)(11)). *See* CMS Clarification, 2014.

38.   Thirty seven states mandate private health insurance coverage of ABA when determined to be "medically necessary" for an individual with ASD. *See* http://www.autismspeaks.org/advocacy/states.

39.   ABA treatment has been prescribed as a medical necessity for J.E. and other members of the Class by licensed medical practitioners, most often during a regular EPSDT screening.

40.   J.E. and other Class members have tried to receive these medically necessary services under Medicaid in the State of Hawai'i. DHS has uniformly denied coverage.

41.   The DHS describes a "medical necessity" as treatments with "sufficient evidence to draw conclusions about the intervention's effects on health outcomes," and that "can be

expected to produce its intended effects on health outcomes." HAR §
1700.1-2.

42.    Director McManaman has concluded that ABA is
not medically necessary, clinically significant, or the standard of
care for ASD treatment, and thus is not covered under Hawai`i's
Medicaid program. *See* Testimony of Director McManaman (March
19, 2014)
http://www.capitol.hawaii.gov/Session2014/Testimony/SB2054_H
D1_TESTIMONY_CPC_03-19-14_.PDF; *See also* HAR § 17-1720-31
(exclusions and limitations of benefits).

43.    Director McManaman's position conflicts with the
State's obligation to provide medically necessary services to children
that correct or ameliorate diagnosed conditions under the federal
Medicaid requirements of EPSDT.

44.    J.E. and the Class are entitled to medically
necessary ABA services under the Medicaid Act.

## LEAD PLAINTIFF ALLEGATIONS

45.    J.E. is a 5 year old boy. He qualifies for Medicaid
and Medicaid's EPSDT services. From birth in 2009, J.E. was
neurologically "jittery" and failed to meet appropriate developmental

milestones at typical ages. As an infant and toddler, J.E. suffered poor suck and swallow reflex, inability to latch, weak cry, sensory issues, and food texture sensitivities. J.E. also exhibited difficulty in transitions, stereotyped and repetitive motor movements, such as spinning himself in a circle, and under-developed social skills.

46.   At 2 years old, J.E. received 11 months of Early Intervention services at the Easter Seals East Sultan Program through the Hawai`i Department of Health. When J.E. was 3 years old, he was diagnosed with Severe Autistic Disorder by a licensed psychologist. The autism diagnosis was confirmed when J.E. was 4 years old through re-evaluations requested by the State of Hawai`i Department of Education (the "DOE") in contemplation of J.E.'s qualification for Special Education services.[1] Since April 2012, J.E. has received DOE Special Education services during school hours, which do not include clinical 1:1 ABA treatment. Ms. Egan assesses that the DOE services are inadequate and that J.E. has regressed. At 5 years old, J.E. remains non-verbal.

---

[1] J.E. has also been diagnosed with Hypotonia, Sensory Processing Disorder, and Developmental Coordination Disorder.

47.   J.E.'s treating neurologist prescribed ABA as the primary and only treatment supported by substantial empirical evidence for his condition. J.E.'s treating psychologist has prescribed 35 to 40 hours a week of intensive 1:1 ABA treatment for J.E. The pervasive developmental delays that J.E. suffers make the recommended ABA medically necessary for J.E. to learn and correct, maintain, or ameliorate the effects of his disability.

48.   Despite requests and inquiries from J.E.'s mother, the DHS has consistently denied Medicaid coverage of ABA treatment for J.E. As a result, as of June 2014, Ms. Egan has paid out-of-pocket for 27 hours of intensive 1:1 ABA treatment per week for J.E., which she cannot afford. Ms. Egan will soon have no choice but to terminate the critical treatment for J.E.

49.   At J.E.'s young age, a lapse in ABA treatment could permanently impair his development. Without ABA, J.E. faces serious consequences, including regression of his skills and increases in potentially dangerous behaviors. Untreated, J.E. will probably not reach his full developmental capacity and is more likely to be institutionalized as an adult.

50.   J.E.'s mother cannot afford to continue to provide
ABA treatment for J.E.

## CLASS ALLEGATIONS

51.   J.E., through his mother, and HDRC bring this
action on J.E.'s behalf and on behalf of a Class of all those similarly
situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of
Civil Procedure.

52.   J.E. and the members of the Class have been or will
be:

a)   receiving health benefits insured by Medicaid that
are subject to the Medicaid Act;

b)   diagnosed with ASD; and

c)   prescribed or determined to be in need of ABA
treatment by a licensed physician.

53.   Thus, the proposed class consists of:

All current and future Medicaid-eligible children in
Hawai`i under 21 years of age diagnosed with an Autism Spectrum
Disorder ("ASD"), who have been or will become eligible to receive,
but have not received, applied behavioral analysis ("ABA") treatment
as a Medicaid covered service ("the Class").

54.    Membership in the Class is so numerous that joinder of all members is impractical. There are more than one hundred Medicaid eligible children who have an ASD and need ABA treatment.

55.    Common questions of law and fact exist, including the main issue of whether ABA is a required treatment for Medicaid eligible children under the Medicaid Act.

56.    The claims and injuries of J.E. are typical of the claims and injuries of the other putative Class members because J.E.: (a) is a child Medicaid recipient diagnosed with an ASD; who has (b) been denied ABA treatment despite being prescribed such treatment; and thus (c) has been, continues to be, and may permanently be injured by the DHS's denial of Medicaid coverage for this critical treatment. These are the same injuries that members of the Class are suffering and will continue to suffer, unless this Court grants relief.

57.    J.E., through his mother Ms. Egan, and HDRC will fairly and adequately represent and protect the interests of the Class. They intend to prosecute this action vigorously in order to secure remedies for the Class. Counsel of record for J.E. is

experienced in federal civil rights litigation and class actions,

including systemic litigation against state defendants challenging

denials of civil rights.

58.   The DHS, through the direction of Director

McManaman, under the color of law, has acted, refused to act,

and/or failed to act on grounds that apply generally to the Class

such that final injunctive or declaratory relief is appropriate for the

Class as a whole.

## COUNT I

## VIOLATION OF CIVIL RIGHTS (MEDICAID ACT)

## 42 U.S.C. § 1983

59.   Plaintiffs incorporate each and every allegation

above as though fully set forth here.

60.   Defendants have violated, and are continuing to

violate, the Medicaid Act by determining that ABA is not a medically

necessary treatment for ASD, thereby depriving J.E. and the Class

their rights under the color of state law in violation of 42 U.S.C. §

1983.

61.   Under the Medicaid Act, the full range of EPSDT

services are mandatory for all Medicaid recipients under the age of

21 as are medically necessary to "ameliorate defects and physical and mental illnesses and conditions." *See* 42 U.S.C. § 1396a(a)(10)(A); 42 U.S.C. § 1396a(a)(43); 42 U.S.C. § 1396d(a)(4)(B); and 42 U.S.C. § 1396d(r)(5).

62.   Defendants' failure to cover ABA under Medicaid has resulted in inadequate treatment options for children with ASD, in further violation of the Medicaid Act, and thus insufficient healthcare coverage thereby depriving J.E. and the Class their rights under color of state law in violation of 42 U.S.C. § 1983.

63.   J.E. and the Class are suffering ongoing and irreparable harm by Defendant's unjustified denial of benefits, and the harm will continue unless Defendant's conduct is declared unlawful and enjoined by this Court. There is no adequate remedy at law.

WHEREFORE, Plaintiffs pray that this Court:

(a)   Declare that Defendants' refusal to provide J.E. and the members of the Class with Medicaid coverage for ABA treatment violates the Medicaid Act at 42 U.S.C. § 1396a(a)(10)(A); 42 U.S.C. § 1396a(a)(43); 42 U.S.C. § 1396d(a)(4)(B); and 42 U.S.C. § 1396d(r)(5) and this violation entitles J.E. and the members of the

Class to relief under 42 U.S.C. § 1983 for violation of their civil rights;

(b)     Declare that Defendants' determination that ABA is experimental and never medically necessary violates rights secured by the Medicaid Act at 42 U.S.C. § 1396a(a)(10)(A); 42 U.S.C. § 1396a(a)(43); 42 U.S.C. § 1396d(a)(4)(B); and 42 U.S.C. § 1396d(r)(5) and this violation entitles J.E. and the members of the Class to relief under 42 U.S.C. § 1983 for violation those rights;

(c)     Enter a preliminary and permanent injunction directing Defendants to cover ABA treatment for J.E. and the Class, consisting of children with ASD under the age of 21 who are beneficiaries of Hawai`i's Medicaid program.

(d)     Award Plaintiffs their reasonable attorneys' fees, costs, and expenses under any applicable law; and

///

///

///

(e)     Grant such other and further relief as this Court

deems just and proper.

DATED: Honolulu, Hawai`i, September 5, 2014.


     /s/ Kristin Holland
PAUL ALSTON
KRISTIN HOLLAND
MAILE OSIKA
LOUIS ERTESCHIK
MATTHEW C. BASSETT

Attorneys for Plaintiffs

HID 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| _____ | ) | |
| *Plaintiff* | ) ) | |
| v. | ) | Civil Action No. |
| _____ | ) ) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒  I returned the summons unexecuted because _____ ; or

❒  Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: