IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| J.E., through his parent SUZANNE EGAN, for themselves and on behalf of a class of those similarly situated, and the HAWAI'I DISABILITY RIGHTS CENTER, in a representative capacity on behalf of its clients and all others similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>RACHAEL WONG, in her official capacity as Director of the State of Hawai'i, Department of Human Services,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIV. NO. 14-00399 HG-BMK |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT (ECF No. 46)**

In this proposed class action lawsuit, Plaintiffs allege

that children and young adults with autism who qualify for

Medicaid are not receiving applied behavioral analysis treatment

("ABA treatment"), which Plaintiffs contend is a medically

necessary treatment under a provision of the Medicaid Act

requiring the provision of "early and periodic screening,

1

diagnostic, and treatment" services ("EPSDT services").
Plaintiffs allege that, for years, the Hawaii Department of Human
Services ("DHS"), has refused to cover the cost for ABA
treatment.  Plaintiffs allege that, while having made some
changes in its official policy, DHS has continued to fail to
provide medically necessary ABA treatment.

The sole issue raised by Defendant's Motion to Dismiss is
whether Plaintiffs have a private right of action to enforce the
provisions of the Medicaid Act which require that the State
Medicaid agency provide medically necessary services to
"ameliorate defects and physical and mental illnesses and
conditions. . ." 42 U.S.C. § 1396d(r)(5).

The Court finds that Plaintiffs have a private right of
action to enforce their alleged rights to certain EPSDT services.

Defendant's Motion to Dismiss (ECF No. 46) is **DENIED**.

## PROCEDURAL HISTORY

On September 5, 2014, Plaintiff filed a Complaint for
Declaratory and Injunctive Relief. (ECF No. 1.)

On December 1, 2014, Plaintiff filed an Amended Complaint
for Declaratory and Injunctive Relief.  (ECF No. 8.)

On June 19, 2015, the parties stipulated to the filing of a
Second Amended Complaint. (ECF No. 42.)

On that same date, the Plaintiff filed a Second Amended

Complaint. (ECF No. 43, corrected by ECF No. 44.)

On July 6, 2015, the Defendant filed a Motion to Dismiss. (ECF No. 46.)

On July 22, 2015, Plaintiff filed a Memorandum in Opposition to Defendant's Motion to Dismiss. (ECF No. 52.)

On August 5, 2015, Defendant filed a Reply. (ECF No. 57.)

### BACKGROUND

Plaintiff J.E., through his parent Suzanne Egan, brings this case as a proposed class action on behalf of himself and all Hawaii children under the age of twenty-one with Autism Spectrum Disorder ("autism") who receive Medicaid services and have been recommended for medically necessary applied behavior analysis treatment ("ABA treatment"). (SAC ¶ 1.)  Plaintiff J.E. is a boy, age 6 at the time of the filing of the Second Amended Complaint ("SAC"), who qualifies for Medicaid's EPSDT services. (SAC ¶ 66.)  Plaintiff J.E. has been diagnosed with autism and a number of medical professionals have recommended ABA treatment for J.E.'s condition.  (SAC ¶¶ 68, 69.)  Plaintiffs allege that the ABA treatment is medically necessary and critical at J.E.'s age to make a behavioral impact on his adult life.  (SAC ¶¶ 69, 70.)  According to the SAC, without ABA treatment J.E. faces serious harm including regression of his skills and increases in potentially dangerous behaviors as he approaches adolescence. (SAC ¶ 70.)  Ms. Egan, Plaintiff J.E.'s mother, depends on

3

Medicaid to cover J.E.'s medical expenses and cannot otherwise afford the cost of ABA treatment. (SAC ¶ 71.)

Plaintiff Hawaii Disability Rights Center ("HDRC") is a Hawaii nonprofit corporation whose purpose is to protect and advocate for the human, legal, and civil rights of people with disabilities. (SAC ¶ 21.) The HDRC brings this action in its representative capacity on behalf of all Hawaii children under the age of twenty-one with Autism Spectrum Disorder ("autism") who receive Medicaid services and have been recommended for medically necessary ABA treatment. (SAC ¶ 20.)

According to the Second Amended Complaint, the Defendant Hawaii Department of Human Services ("DHS"), of which Defendant Rachael Wong is the director, does not provide Medicaid coverage for ABA treatment regardless of medical necessity and, thus, fails to comply with the Medicaid Act. (SAC ¶ 1.)

Plaintiff alleges that he and the proposed Class are entitled to a broad scope of "early and periodic screening, diagnostic, and treatment" services ("EPSDT services") under the Medicaid Act, which includes ABA treatment. (SAC ¶ 2.) Plaintiffs further allege that the cost of these services must be covered by Medicaid when medically necessary. (Id.)

According to the SAC, ABA treatment is an effective medical treatment for autism which can lead to the maximum reduction of physical and mental disabilities for children with autism and

4

bring them to their best possible functional level. (SAC ¶¶ 28-29.) Over 1,500 children and young adults under the age of twenty-one in Hawaii suffer from autism, many of whom are recipients under Medicaid's EPSDT services program. (SAC ¶ 30.)

DHS is the State agency responsible for administering Medicaid in Hawaii. (SAC ¶ 3.) The SAC alleges that DHS's refusal to provide coverage for ABA treatment for the treatment of autism is a long-standing policy. Plaintiffs allege that for years DHS has refused to cover ABA treatment for recipients of EPSDT services under Medicaid based on a conclusion that ABA treatment is never medically necessary. (SAC ¶¶ 4, 52.) Plaintiffs allege that DHS planned to formalize its long-standing policy to exclude ABA treatment from Medicaid coverage beginning on January 1, 2015. (SAC ¶¶ 3, 4.)

On December 1, 2014, the State and DHS administration changed and Rachael Wong succeeded Patricia McManaman as the acting Director of DHS. (SAC ¶ 5.) On December 4, 2015, Defendant informed Plaintiffs that the ABA exclusion would be removed from Medicaid contracts and not implemented, as planned, on January 1, 2015. (SAC ¶ 6.) In light of this change in circumstances, Plaintiffs withdrew their request for a preliminary injunction. (ECF No. 23.)

On January 13, 2015, DHS issued a Memorandum to Medicaid providers and health plans regarding coverage of "intensive

behavioral therapy for autism spectrum disorder." (SAC ¶ 8.) According to the SAC, the Memo revealed DHS's intent to develop a program for the coverage of ABA treatment under Medicaid. Plaintiffs, however, allege that the Memo did not include the details necessary for DHS to develop and implement a federally-compliant program. (Id. ¶¶ 8-11.) Plaintiffs further allege that DHS has not made any public statements to inform beneficiaries of this change in policy, nor established any operational improvements that secure access to, and coverage for, ABA treatment. (SAC ¶ 52.)

Plaintiffs allege that DHS continues to violate Plaintiffs' federal right to early and periodic screening, diagnostic and treatment services ("EPSDT services") under the Medicaid Act. (SAC ¶ 72.) Plaintiffs allege that, after this case was filed, DHS claimed it changed its policy and has made repeated representations in the litigation that ABA treatment is now covered. Yet, according to Plaintiffs, Plaintiff J.E. still cannot find a Medicaid provider for his ABA treatment. (SAC ¶ 12.) Plaintiffs further allege that DHS continues to refuse to educate the public about the ABA treatment that is now allegedly available. (SAC ¶ 9.)

Plaintiffs allege that as Hawaii's Medicaid agency, DHS is required to inform recipients of EPSDT services of the "services available under the EPSDT program and where and how to obtain

6

those services." (SAC ¶ 63 (citing 42 C.F.R. §

441.56(a)(2)(ii)).)  DHS is required to "make available a variety

of individual and group providers qualified and willing to

provide EPSDT services." 42 C.F.R. § 441.61(b).  Despite these

obligations, Plaintiffs allege that no list of DHS-approved ABA

treatment providers exists for recipients of EPSDT services to

seek out ABA treatment. (SAC ¶ 64.)  Plaintiffs also allege that

DHS has failed to amend the State Plan for the Medicaid program

to reflect the availability of ABA treatment as required by 42

C.F.R. § 430.12(c)(1).  (SAC ¶ 65.)

Plaintiffs seek declaratory and injunctive relief against

DHS for its violations of Plaintiffs' federal rights to EPSDT

services as provided for by the federal Medicaid Act.

Plaintiffs' Complaint contains one Count - Violation of Civil

Rights (Medicaid Act) pursuant to 42 U.S.C. § 1983.  Plaintiffs

claim that DHS has violated their rights established by certain

provisions of the Medicaid Act by excluding ABA treatment from

available services and failing to establish a program to supply

access to covered services.  (SAC ¶ 88.)  According to the SAC,

DHS's alleged violations have resulted in inadequate treatment

options for children with autism and insufficient healthcare

coverage in violation of Medicaid. (Id.)

In particular, Plaintiffs cite various provisions of the

Medicaid Act - 42 U.S.C. § 1396a(a)(10)(A); 42 U.S.C. §

1396a(a)(43); 42 U.S.C. § 1396d(a)(4)(B); and 42 U.S.C. § 1396d(r)(5).  They allege in the Complaint that under the Medicaid Act, the full range of EPSDT services are mandatory for all Medicaid recipients under the age of twenty-one if they are medically necessary to "ameliorate defects and physical and mental illnesses and conditions."  (SAC ¶ 85.)

Finally, the SAC includes allegations as to why the DHS's Memo issued on January 13, 2015, which generally recognized coverage for ADA treatment, does not satisfy DHS's obligations under the Medicaid Act.  Plaintiffs allege that the Memo is deficient because it: (a) did not notify Medicaid recipients of the availability of coverage for ABA treatment for autism under Medicaid; and (b) does not bring DHS into compliance with the Medicaid Act.  (SAC ¶ 89.)

## **STANDARD OF REVIEW**

The Court must dismiss a complaint as a matter of law pursuant to Federal Rule of Civil Procedure 12(b)(6) where it fails "to state a claim upon which relief can be granted."  Rule (8)(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all allegations of material fact to be true and draw all reasonable inferences in favor of

the non-moving party.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).

Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.  Id. at 699.  The Court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

In Bell Atl. Corp. v. Twombly, the United States Supreme Court addressed the pleading standards under the Federal Rules of Civil Procedure in the anti-trust context.  550 U.S. 544 (2007). The Supreme Court stated that Rule 8 of the Federal Rules of Civil Procedure "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," and that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 555.

Most recently, in Ashcroft v. Iqbal, the Supreme Court clarified that the principles announced in Twombly are applicable in all civil cases.  129 S.Ct. 1937 (2009).  The Court stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."  Id. at 1949 (citing Twombly, 550 U.S. at 555).  To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face.  Id. (quoting Twombly, 550 U.S. at 570).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. (citing Twombly, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Id. (quoting Twombly, 550 U.S. at 556).  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).

The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." AE ex. rel Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (internal quotations omitted).

**ANALYSIS**

Defendant has moved to dismiss Plaintiffs' Second Amended

10

Complaint ("SAC") on the grounds that Plaintiffs do not have a private cause of action to enforce their alleged right to applied behavioral analysis treatment ("ABA treatment") for autism spectrum disorder ("autism") as a medically necessary treatment under Medicaid's program for "early and periodic screening, diagnosis and treatment" services ("EPSDT services").

**The Medicaid Program**

Medicaid is a cooperative federal-state program through which the federal government provides financial aid to states that furnish medical assistance to eligible low-income individuals. See 42 U.S.C. § 1396 et seq.; see also Atkins v. Rivera, 477 U.S. 154, 156 (1986).  The federal government grants funds to the states for the provision of health care services, and the states act as administrators of those funds. (Id.) States are not required to participate in the Medicaid program, but if they do they must comply with the requirements of the Medicaid Act and its regulations.  To qualify for federal assistance, a state must submit to the Secretary and have approved a "state plan" for "medical assistance," 42 U.S.C. § 1396a(a), that contains a comprehensive statement describing the nature and scope of the state's Medicaid program. 42 CFR § 430.10. "The state plan is required to establish, among other things, a scheme for reimbursing health care providers for the medical assistance provided to eligible individuals." Wilder v.

11

<u>Virginia Hosp. Ass'n</u>, 496 U.S. 498, 502 (1990).

Section 1396a(a)(10)(A) states that the provision of EPSDT services is mandated to be included in the state plan.[1]  Section 1396a(a)(43) also mandates that a state plan include the provision of EPSDT services.[2]  Thus, the requirement that EPSDT services be provided has resulted in states adopting comprehensive child health programs designed to assure the availability and accessibility of health care resources for the treatment, correction and amelioration of the unhealthful conditions of individual Medicaid recipients under the age of twenty-one.

**<u>Relevant Provisions of Medicaid Law</u>**

By taking federal funds for its Medicaid program, the State of Hawaii is required to provide "early and periodic screening, diagnostic, and treatment" services ("EPSDT services") to all

---

[1] Section 1396a(a)(10)(A) mandates that a state plan provide medical assistance, "including at least the care and services listed in paragraphs (1) through (5), (17), (21) and (28) of section 1396d(a). . . " 42 U.S.C. § 1396a(a)(10)(A). Section 1396d(a) defines the term "medical assistance," and subpart 4(B) of that subsection includes "early and periodic screening, diagnostic, and treatment services (as defined in subsection (r) of this section)." 42 U.S.C. § 1396d(a)(4)(B). Because § 1396a(a)(10)(A) states that a state plan must provide at least the medical assistance provided in § 1396d(a) (1)-(5), (17), (21), and (28), EPSDT services must be included in a state plan.

[2] Section 1396a(a)(43) mandates that a state plan provide for screening services, arrange corrective treatment for disorders uncovered by the screening services, and inform all eligible recipients of the availability of EPSDT services.

Medicaid eligible children under the age of twenty-one.

**42 U.S.C. § 1396a(a)(10) & (43)**

Section 1396a of Title 42 of the United States Code sets forth the requirements for state plans for medical assistance under federal Medicaid law.  Section 1396a(a)(10)(A) provides that a state plan for medical assistance must make certain care and services available to Medicaid recipients.  Section 1396a(a)(10)(A) references 42 U.S.C. § 1396d(a)(4)(B).  Under Section 1396d(a)(4)(B) "early and periodic screening, diagnostic, and treatment services (as defined in subsection (r) of this section) for individuals who are eligible under the plan and are under the age of 21" are required services.  42 U.S.C. § 1396d(r) sets forth a lengthy definition of the services that qualify as EPSDT services.

In accordance with the mandate for the provision of EPSDT services, the State must provide any listed service under the Medicaid Act even if the service is not in the State's Medicaid Plan for adults. 42 U.S.C. § 1396d(r)(5)("Such other necessary healthcare, diagnostic services, treatment, and other measures . . . to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan."). These services include any of those listed in 42 U.S.C. § 1396d(a)(1)-(29).

13

42 U.S.C. § 1396d(a)(13) pertains to coverage for medically necessary behavioral health services.  In particular, 1396d(a)(13) requires the State to provide preventative services such as "other diagnostic, screening, and rehabilitative services, including . . . (C) any medical or remedial services (provided in a facility, a home, or other setting) recommended by a physician or other licensed practitioner of the healing arts within the scope of their practice under State law, for the maximum reduction of physical or mental disability and restoration of an individual to the best possible functional level." 42 U.S.C. § 1396d(a)(13).

Section 1396a(a)(43) requires that state plans for medical assistance provide for informing eligible recipients of the availability of EPSTD services.  That Section also requires a state to arrange and provide for such screening services when requested.  Section 1396a(a)(43) provides, in relevant part, that a state plan for medical assistance must provide for:

> (A) informing all persons in the State who are under the age of 21 and who have been determined to be eligible for medical assistance including services described in section 1396d(a)(4)(B) of this title, of the availability of early and periodic screening, diagnostic, and treatment services as described in section 1396d(r) of this title and the need for age-appropriate immunizations against vaccine-preventable diseases,
>
> (B) providing or arranging for the provision of such screening services in all cases where they are requested,

14

> (C) arranging for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening services, and
>
> *   *   *

42 U.S.C. § 1396a(a)(43).


**Private Cause of Action Pursuant to Section 1983 for State Medicaid Agency's Failure to Provide EPSDT Services**

The only question before the Court, at this stage, is whether Medicaid recipients have a private cause of action to enforce their rights to EPSDT services under 42 U.S.C. § 1983. 42 U.S.C. § 1983 imposes liability on anyone who under color of state law deprives a person of "rights, privileges, or immunities" secured by the laws or the Constitution of the United States. 42 U.S.C. § 1983.

As Plaintiffs point out, a number of courts have recognized a private cause of action, under Section 1983, to enforce a Medicaid recipient's right to EPSDT services and to challenge the adequacy of a state plan that does not cover a particular treatment.  In <u>Westside Mothers v. Haveman</u>, 289 F.3d 852 (6th Cir. 2002), for instance, a welfare rights organization sued state officials under Section 1983 for systemically depriving Medicaid recipients of EPSDT services under its Medicaid program. The Sixth Circuit Court of Appeals held that Medicaid's EPSDT

provisions – the same provisions as at issue here – created a right privately enforceable against state officials through Section 1983.  Id. at 863; see Pediatric Specialty Care, Inc. v. Arkansas Dept. of Human Services, 293 F.3d 472 (8th Cir. 2002) (recognizing private cause of action under Section 1983 to enforce right to EPSDT services under Medicaid law); Miller by Miller v. Whitburn, 10 F.3d 1315, 1319-20 (7th Cir. 1993) (same).

In S.D. ex rel. Dickson v. Hood, 391 F.3d 581 (5th Cir. 2004) the Fifth Circuit Court of Appeals similarly recognized a private right of action by Medicaid recipients against the state. The Dickson Court held that the state Medicaid agency violated the Medicaid Act by denying payment for a prescription for disposable incontinence underwear that was necessary to ameliorate a recipient of EPSDT services' birth defect and condition of incontinence. Id. at 597, 603 ("the Medicaid Act confers the right to the health care, treatment, services and other measures described in § 1396d(a) when necessary for EPSDT ameliorative purposes upon an identified class.").

Although the Ninth Circuit Court of Appeals has not addressed the question of whether there is a private right of action with regard to the provision of EPSDT services under Medicaid, it has found a private right of action under 42 U.S.C. § 1396a(a)(10)(A) for similarly mandated services.  In Watson v. Weeks, 436 F.3d 1152, 1155 (9th Cir. 2006), the Ninth Circuit

Court of Appeals found that Medicaid-eligible Oregon residents and an advocacy organization had a private right of action to enforce the requirement that a state plan, pursuant to 42 U.S.C. § 1396a(a)(10)(A), include the provision of home and community based services as an alternative to Medicaid institutional nursing facility services.

Plaintiffs' case is similarly based on Section 1396a(a)(10)(A), requiring that state plans provide certain care and services to Medicaid recipients.  The <u>Watson</u> Court applied to found a private cause of action is created by Section 1396a(a)(10)(A).[3]  The same reasoning applies in the case before the Court here.

**<u>United States Supreme Court's Decision in Armstrong v.</u>**
**<u>Exceptional Child Center, Inc.</u>**

---

[3] In the <u>Watson</u> case, the Ninth Circuit Court of Appeals also considered whether another provision of the Medicaid law, Section 1396a(a)(17), created a private cause of action.  <u>Watson</u>, 436 F.3d at 1162.  Section 1396a(a)(17) provides that a state plan for medical assistance "must ... include reasonable standards (which shall be comparable for all groups ...) for determining eligibility for and the extent of medical assistance under this plan."  The Court applied the same analysis as it did in finding a private cause of action under Section 1396a(a)(10) and held that Section 1396a(a)(17) did not provide a private right of action.  <u>Id.</u> at 1162-63.  The Court found that first prong of the private right of action test set forth in <u>Blessing v. Freestone</u>, 520 U.S. 329 (1997) was not satisfied  because the provision did not provide an "unambiguously conferred right." Id. at 1162. The <u>Watson</u> decision illustrates, as discussed below, that whether a private right of action exists under a certain provision of the Medicaid law is highly dependent upon the language and nature of the particular provision at issue.

Defendant's Motion to Dismiss hinges on the United States Supreme Court's March 2015 decision in <u>Armstrong v. Exceptional Child Center, Inc</u>., ___ U.S. ___ , 135 S.Ct. 1378 (2015).  In <u>Armstrong</u>, providers of residential habilitation services to Medicaid-eligible individuals brought an action against the state agency running Idaho's Medicaid program challenging the agency's failure to amend existing Medicaid reimbursement rates.  The providers were seeking to enforce 42 U.S.C. § 1396a(a)(30)(A), regarding rate reimbursement for Medicaid services providers, and brought their action under the Supremacy Clause of the United States Constitution.  <u>Id.</u> at 1383.  The district court found that the providers had an implied cause of action under the Supremacy Clause to seek injunctive relief, and the Ninth Circuit Court of Appeals affirmed.  <u>Id.</u>  The United States Supreme Court reversed, recognizing that the Supremacy Clause is not the source of any federal rights and holding that it "certainly does not create a cause of action." <u>Id.</u>  The Court similarly found that the providers could not proceed against the state in equity. <u>Id.</u> at 1385.

Finally, in Part IV of its decision, the Court considered whether the providers had a cause of action under the Medicaid Act itself.  Part IV was not joined by a majority of the Court and is a plurality opinion.  It is also *dicta*.  The providers had not argued before the lower courts that they had a private right

18

of action under the Medicaid Act itself.  <u>Id.</u> at 1397 (noting
that the providers had not argued that they had a private right
of action under the Medicaid Act and "rightly so.")  <u>Id.</u> at 1397.

In a few paragraphs, the Court rejected the notion that the
providers could have a private right of action under Section
1396a(a)(30)(A).  The Court explained that Section
1396a(a)(30)(A), which pertains to the reimbursement rates set by
the state for providers, lacked "the sort of rights-creating
language needed to imply a private right of action." <u>Id.</u> at 1387.

The Court then discussed whether the providers were intended
beneficiaries under the federal-state Medicaid agreement.  <u>Id.</u>
Because of the nature of the providers' cause of action, the
Court did not apply the framework for evaluating whether a
statute creates a privately enforceable right under Section 1983
as set forth in <u>Blessing v. Freestone</u>, 520 U.S. 329 (1997).

Under <u>Blessing</u>, a statute will be found to create an
enforceable right if, after a particularized inquiry, the court
concludes: (1) the statutory section was intended to benefit the
putative plaintiff, (2) it sets a binding obligation on a
government unit, rather than merely expressing a congressional
preference, and (3) the interests the plaintiff asserts are not
so "'vague and amorphous' that [their] enforcement would strain
judicial competence." <u>Id.</u> at 341 (quotation omitted).  It was
under this framework that the Fifth, Sixth, Seventh, Eighth and

19

Ninth Circuit Courts of Appeals found a private cause of action, pursuant to Section 1983, for Medicaid recipients to enforce the rights conferred by Medicaid law for EPSTD services.

Along these lines, Plaintiffs argue that their claim is distinguishable from those analyzed by Armstrong in three important ways.  First, Plaintiffs are Medicaid beneficiaries entitled to EPSDT services, not Medicaid providers.  Second, Plaintiffs' suit relies on 42 U.S.C. § 1983.  Plaintiff does not rely on the Supremacy Clause or an equity theory.  Third, Plaintiffs sue for EPSDT services pursuant to individual rights conferred by 42 U.S.C. §§ 1396a(a)(10) and (43), not for higher provider reimbursement rates based on the federal agency directive in 42 U.S.C. § 1396a(a)(30). (Opposition, ECF No. 52, at p. 11.)

The Court agrees and finds that the Armstrong decision is distinguishable from the present case and does not dictate that Plaintiffs are deprived of a private right of action to enforce their rights to EPSDT services.  The Armstrong Court's discussion regarding the lack of a private cause of action to enforce Section 1396a(a)(30) was not a departure from existing precedent. The Ninth Circuit Court of Appeals in Sanchez v. Johnson, 416 F.3d 1051 (9th Cir. 2005) reached the same conclusion ten years earlier.  In finding that there was no private cause of action under Section 1396a(a)(30) of the Medicaid Act, the Sanchez Court

20

reasoned that "[t]he text and structure of § 30(A) do not persuade us that Congress has, with a clear voice, intended to create an individual right that either Medicaid recipients or providers would be able to enforce under § 1983." Sanchez, 416 F.3d at 1062.  The Sanchez Court pointed out the difference between Section 1396a(a)(30) of the Medicaid Act and Section 1396a(a)(10).  The opinion states that a finding that Section 1396a(a)(30) does not give rise to a private cause of action did not mean that there was no private cause of action under Section 1396a(a)(10):

> Although 42 U.S.C. § 1396a(a) sets out a comprehensive list of requirements that a state plan must meet, it does not describe every requirement in the same language. Some requirements, such as . . . § 10, focus on individual recipients, while others are concerned with the procedural administration of the Medicaid Act by the States and only refer to recipients, if at all, in the aggregate. Section 30(A) is one of the latter provisions . . . .

Sanchez, 416 F.3d at 1062.

The following year, the Watson Court decision is consistent with the holding in Sanchez.  In Watson, 436 F.3d at 1159-60, the Ninth Circuit Court of Appeals recognized that a Medicaid recipient has a private cause of action to enforce his or her right to certain treatments or services under Section 1396a(a)(10) pursuant to Section 1983.

In its reply, the Department of Human Services ("DHS")

argues that applied behavioral analysis ("ABA") treatment is not specifically provided as an enumerated service under the definition of "early and periodic screening, diagnostic, and treatment" ("EPSTD") services, but that if ABA is actually prescribed as medically necessary it will be covered.  The question of whether ABA treatment is, in fact, a medically necessary treatment for children and young adults with autism, for which DHS is failing to provide coverage, is not before the Court on DHS's Motion to Dismiss.  The Court holds that Plaintiffs have a private cause of action under the Medicaid Act pursuant to which they may make these allegations.

## CONCLUSION

Defendant's Motion to Dismiss (ECF No. 46) is **DENIED**.

IT IS SO ORDERED.

Dated: August 27, 2015, Honolulu, Hawaii.



/s/ Helen Gillmor

Helen Gillmor
United States District Judge

---

J.E., through his parent Suzanne Egan, for themselves and on behalf of a class of those similarly situated et al. v. Rachael Wong; 14cv00399 HG-BMK; **ORDER DENYING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT (ECF No. 46)**