IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| J.E., through his parent SUZANNE EGAN, for themselves and on behalf of a class of those similarly situated; and the HAWAII DISABILITY RIGHTS CENTER, in a representative capacity on behalf of its clients and all others similarly situated,<br><br>                Plaintiffs,<br><br>        vs.<br><br>RACHAEL WONG, in her official capacity as Director of the State of Hawaii, Department of Human Services,<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 14-00399 HG-KJM |

**ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF No. 100)**

**and**

**GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 98)**

Plaintiffs J.E., through his parent, Suzanne Egan, and the Hawaii Disability Rights Center filed a Complaint alleging that the State of Hawaii, Department of Human Services, violated provisions of the Medicaid Act, 42 U.S.C. § 1396 *et seq.*

Plaintiffs claim that the Department of Human Services has been precluding the state Medicaid program from covering Applied Behavior Analysis ("ABA") as a treatment for autistic children

1

and young adults, in violation of the Medicaid Act's early and periodic screening, diagnostic, and treatment ("EPSDT") services mandate.  Plaintiffs also allege that the Department has failed to inform eligible persons that ABA is an available early and periodic screening, diagnostic, and treatment service.

**THE PARTIES FILED CROSS MOTIONS FOR SUMMARY JUDGMENT.**

Plaintiffs seek a declaratory ruling stating that:

(1) the State of Hawaii, through the Department of Human Services, violated the Medicaid Act by failing to cover ABA treatment pursuant to the EPSDT services mandate;

Plaintiffs also seek an injunction:

(2) ordering the Department to include ABA as a covered treatment under the state Medicaid program for persons eligible for EPSDT services;

(3) compelling the Department to publicize the Medicaid program's coverage of ABA treatment; and

(4) instructing the Department to submit a State Plan Amendment memorializing a policy that adds ABA treatment as a covered EPSDT benefit.


Defendant seeks dismissal of Plaintiffs' action as moot and declaratory judgment in its favor as to the following:

(1) the Department has always covered medically necessary autism treatment under Medicaid law;

(2) the Department does not have an obligation pursuant to the

Medicaid Act to inform persons eligible for EPSDT services about ABA treatment; and

(3) the Defendant is not required to submit a State Plan Amendment to the Centers for Medicare and Medicaid Services that specifically memorializes coverage for ABA treatment.


Plaintiffs' Motion for Summary Judgment (ECF No. 100) and Defendant's Motion for Summary Judgment (ECF No. 98) are each **GRANTED, IN PART, AND DENIED, IN PART.**

## PROCEDURAL HISTORY

On September 5, 2014, Plaintiffs J.E. and the Hawaii Disability Rights Center (collectively, "Plaintiffs") filed a Complaint. (ECF No. 1).

On December 1, 2014, Plaintiffs filed their First Amended Complaint. (ECF No. 8).

On June 19, 2015, the Magistrate Judge approved a stipulation by the parties for Plaintiffs to file a Second Amended Complaint. (ECF No. 42).

On June 22, 2015, Plaintiffs filed a Second Amended Complaint. (ECF No. 44).

On July 6, 2015, Defendant Rachael Wong, Director of the State of Hawaii, Department of Human Services ("Defendant") filed a Motion to Dismiss Plaintiffs' Second Amended Complaint. (ECF No. 46).

On August 27, 2015, the Court denied Defendant's Motion to Dismiss.  (ECF No. 62).

On December 10, 2015, Plaintiffs filed a Motion for Class Certification.  (ECF No. 78).

On February 10, 2016, Plaintiffs filed PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT and PLAINTIFF'S CONCISE STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT.  (ECF Nos. 100; 101).

On February 10, 2016, Defendant filed DEFENDANT RACHAEL WONG, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICE'S MOTION FOR SUMMARY JUDGMENT and SEPARATE AND CONCISE STATEMENT OF FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.  (ECF Nos. 98; 99).  On the same date, Defendant also filed a Motion to Seal Exhibits 4, 7, 8, and 9.  (ECF No. 97).

On February 19, 2016, Plaintiffs filed PLAINTIFFS' AMENDED CONCISE STATEMENT OF FACTS.  (ECF No. 104).  On the same date, Defendant filed DEFENDANT RACHAEL WONG, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICE'S FIRST AMENDED SEPARATE AND CONCISE STATEMENT OF FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.  (ECF No. 103).

On February 19, 2016, the Court granted Defendant's Motion to Seal Exhibits 4, 7, 8, and 9.  (ECF No. 105).

On February 23, 2016, the Magistrate Judge filed a Findings and Recommendation to deny Plaintiffs' Motion for Class Certification.  (ECF No. 108).

On March 10, 2016, Defendant filed DEFENDANT RACHAEL WONG'S, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICES, MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. (ECF No. 109). On the same date, Defendant also filed DEFENDANT RACHAEL WONG'S, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICES, STATEMENT IN OPPOSITION TO PLAINTIFFS' AMENDED CONCISE STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. (ECF No. 110).

On March 10, 2016, Plaintiffs filed PLAINTIFFS' MEMORANDUM IN OPPOSITION TO [ECF NO. 98] DEFENDANT RACHAEL WONG, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICES' MOTION FOR SUMMARY JUDGMENT, FILED FEBRUARY 10, 2016. (ECF No. 111). On the same date, Plaintiffs also filed PLAINTIFFS' CONCISE STATEMENT OF FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT. (ECF No. 112).

On March 17, 2016, the Court adopted the Magistrate Judge's Findings and Recommendation to deny Plaintiffs' Motion for Class Certification. (ECF No. 113).

On April 25, 2016, the Plaintiffs filed PLAINTIFFS' REPLY IN SUPPORT OF [ECF NO. 100] MOTION FOR SUMMARY JUDGMENT. (ECF No. 118). On the same date, Defendant filed DEFENDANT RACHAEL WONG, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICE'S REPLY IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT. (ECF No. 117).

On May 5, 2016, the Court held a hearing on the parties'

cross-motions for summary judgment.  (ECF No. 119).  At the hearing, the Court instructed the parties to file supplemental memoranda addressing the Hawaii Disability Rights Center's standing.

On May 13, 2016, Defendant filed DEFENDANT RACHAEL WONG, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICE'S SUPPLEMENTAL BRIEF ON HAWAII DISABILITY RIGHTS CENTER'S STANDING.  (ECF No. 120).

On May 20, 2016, Plaintiffs filed PLAINTIFFS' RESPONSE TO DEFENDANT'S SUPPLEMENTAL MEMORANDUM ON STANDING OF THE HAWAII DISABILITY RIGHTS CENTER.  (ECF No. 122).

**BACKGROUND**

**J.E.**

Plaintiff J.E. ("J.E.") is a seven-year-old boy who was first diagnosed with autism spectrum disorder ("autism") at age four.[1]  (Egan Decl. at ¶¶ 3-6; 18-19, ECF No. 104-2).  J.E. lives in the State of Hawaii and receives Medicaid benefits.  (Id. at ¶ 4).

**The Hawaii Disability Rights Center**

The Hawaii Disability Rights Center ("the HDRC") is a non-

---

[1] The United States Department of Education regulations describe autism as a "developmental disability significantly affecting verbal and nonverbal communication and social interaction, generally evident before age three, that adversely affects a child's educational performance. Other characteristics often associated with autism are engagement in repetitive activities and stereotyped movements, resistance to environmental change or change in daily routines, and unusual responses to sensory experience."  34 C.F.R. § 300.8(c)(1)(i).

profit "Protection and Advocacy" organization that serves Hawaii's disabled residents.  (Erteschik Supp. Decl. at ¶ 3, ECF No. 122-1).  A Protection and Advocacy organization defends and supports the legal and human rights of individuals with disabilities.  See 29 U.S.C. § 794e; Haw. Rev. Stat. § 333F-8.5.  The HDRC is the designated Protection and Advocacy organization for the State of Hawaii.  (Erteschik Supp. Decl. at ¶ 3).

The HDRC has constituents instead of members. (Id. at ¶ 4).  During the calendar years 2014 and 2015, the HDRC had a least 181 Medicaid-eligible constituents with an autism diagnosis.  (Id. at ¶ 8).  J.E. is a constituent of the HDRC.  (Id. at ¶¶ 9-13).

**The Medicaid Program in Hawaii**

The State of Hawaii, Department of Human Services ("the Department") is the agency responsible for administering the Medicaid program in Hawaii.  See 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10; Haw. Rev. Stat. §§ 346-7; 346-14.  The Department provides Medicaid services through a managed care system.  (Fink Depo. at 40:3-9, Ex. 3 of Plas. Amended CSF, ECF No. 104-5).

Under the managed care system, the Department contracts with third-party health plans to provide Medicaid coverage to eligible beneficiaries.  (Id. at 40:3-42:6).  It also relies on the health plans to communicate directly with Medicaid beneficiaries.  (Id. at 53:24-55:16; Dep't of Human Servs. Request for Proposal at pp. 124-128; Ex. 3 of Def. Amended CSF, ECF No. 103-6).  If a

beneficiary is unsatisfied with a medical coverage decision, he may engage in a grievance or appeals process with the health plan.  (Dep't of Human Serv. Request for Proposal at pp. 151-153; 330-333, Ex. 3 of Def. Amended CSF).  The Department is informed of grievances and appeals.  Unless a grievance or appeal is submitted, the Department does not generally know whether the health plan has denied a particular medical treatment.  (Fink Depo. at 22:17-24; 167:3-10, Ex. 3 of Plas. Amended CSF).

**The Department's Initial Position on ABA Treatment**

Prior to August 2014, the Department did not view Applied Behavior Analysis ("ABA") as an effective form of treatment for autism.

In January 2013, the State's Legislative Reference Bureau published a report regarding ABA coverage.  Citing to an interview with the Department's Medicaid administrator, Dr. Kenneth Fink ("Dr. Fink"), the report stated that ABA treatment was not covered by Medicaid, as it was not considered "evidence[]-based and, therefore, not medically necessary."  (Ex. 6 of Plas Amended CSF, ECF No. 104-9).

In April 2013, the then-director of the Department, Patricia McManaman ("Director McManaman"), testified before the state legislature in opposition to a bill that would require health insurers to provide coverage for ABA.  Director McManaman stated that ABA treatment was "not currently covered by the Hawaii Medicaid program."  (Ex. 7 of Plas. Amended CSF at p. 1, ECF No. 104-10).

**J.E. is Prescribed ABA Treatment**

In October 2013, a physician at Shriners Hospital for Children evaluated J.E.'s autism and prescribed J.E. be treated for his autism by receiving 20 hours of ABA treatment per week. (Ex. 1 of Plas. Amended CSF at Bates Nos. E00544-47, ECF No. 104-4).

On November 10, 2013, a psychologist from a separate healthcare provider recommended that J.E. receive ABA to "increase manding[2] and verbal communication." (Id. at Bates Nos. E000516; E000531).

At the end of 2013, J.E.'s mother conducted her own research as to whether Hawaii's Medicaid program covered ABA treatment. (Egan Decl. at ¶¶ 14; 20-21, ECF No. 104-2). As part of her investigation, she spoke with Leolinda Parlin, a "Medicaid Ombudsman," ("Medicaid Ombudsman Parlin") about ABA. (Id. at ¶ 15). The Department asserts that a Medicaid Ombudsman is a third-party entity that the Department utilizes to "provide an alternative resource for [Medicaid] beneficiaries . . . to assist them in resolving issues or concerns between themselves and the medical, dental, or behavioral plans of the [Medicaid] Programs informally and up through a [Medicaid] Health plan's

---

[2] "Manding" is a term of art that refers to a child's request for a desired object. See R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 179 (2d Cir. 2012).

grievance/appeals process." (Dep't of Human Servs. Ombudsman Request for Proposal at p. 26, Ex. 21 of Def. Supp. Memo., ECF No. 120-2; Def. Ans. to Plas. Interrogatories at p. 4, Ex. 3a of Plas. Amended CSF, ECF No. 104-6). According to J.E.'s mother, Medicaid Ombudsman Parlin confirmed that ABA treatment would not be covered under Medicaid. (Egan Decl. at ¶¶ 14; 15).

In December 2013, J.E. was enrolled in an ABA treatment program with a private ABA provider. (Id. at ¶ 21). From December 2013 through February 2014, J.E. received approximately 6-10 hours of ABA per week at the private provider. (Plas. Ans. to Def. Interrogatories at p. 3, Ex. 10 of Def. Amended CSF, ECF No. 103-13). The ABA treatment with the private provider was paid directly by J.E.'s family for those months; J.E.'s mother did not submit coverage claims to J.E.'s Medicaid health plan. (Egan Decl. at ¶ 21).

**The Department Maintains its Public Position on ABA Treatment**

On March 19, 2014, Director McManaman again presented testimony before the state legislature. She expressed support "for the intent of the coverage" of ABA treatment, but questioned whether sufficient evidence to support the effectiveness of ABA existed at that time. (Mar. 19, 2014 Testimony of Director McManaman at pp. 2-3, Ex. 12 of Plas. Amended CSF, ECF No. 104-15).

**Payment for J.E.'s ABA Treatment is Submitted by the Private Provider**

In late March 2014, J.E.'s mother spoke with the private ABA

provider about Medicaid coverage of J.E.'s ABA treatment.  Based on her discussions with the provider, J.E.'s mother continued to believe that such a claim would be denied.  (Egan Decl. at ¶ 26). The private ABA provider nonetheless submitted claims for J.E.'s ABA treatment to his Medicaid health plan.  J.E.'s Medicaid health plan paid for his ABA treatment at the private ABA provider from March through August 2014.[3]  (Id. at ¶ 29; Behavior Analysts Inc. Mar. 31, 2014 Invoice, Ex. 4 of Plas. Amended CSF, ECF No. 104-7).  The private provider e-mailed J.E.'s mother in May 2014 to inform her that the health plan had begun paying for the private provider's ABA services. (Def. Sealed Exs. 8; 9). J.E.'s mother, however, asserts that she did not know about the health plan's payments until after she filed this lawsuit in September 2014.  (Egan Decl. at ¶ 29).

**J.E.'s ABA Treatment at the Private Provider Increases**

From March through May 2014, J.E. continued to receive 6-10 hours of ABA treatment at the private provider.  (Plas. Ans. to Def. Interrogatories at p. 4, Ex. 10 of Def. Amended CSF).

Beginning in June 2014, J.E. began to receive 20 hours of ABA treatment at the private provider.  (Id.)

**J.E.'s ABA Treatment Prescription Increases**

On July 14, 2014, a second psychologist recommended that J.E. undergo 35-40 hours of ABA treatment per week.  (Ex. 1 of

---

[3]  The provider received payment for ABA services rendered in March 2014 on May 2, 2014.  (Ex. 4 of Plas. Amended CSF, ECF No. 104-7).

Plas. Amended CSF at Bates Nos. E00034-35).

**J.E. Stops Treatment at the Private Provider**

In August 2014, J.E. stopped attending the private provider's ABA treatment program.  (Plas. Ans. to Def. Interrogatories at p. 4, Ex. 10 of Def. Amended CSF).  According to J.E.'s mother, the private provider "had staffing issues that could not accommodate the frequency and intensity of services . . . and upon inquiry to Medicaid I could not get any confirmation that I could rely on future payment for J.E.'s continued minimal ABA services."  (Egan Decl. at ¶ 30).

**The Agency for Healthcare Research and Quality Report**

In August 2014, the federal Agency for Healthcare Research and Quality published a report on autism.  The report discussed various autism treatment studies, concluding that ABA is evidence-based and "can positively affect a subset of children with [autism]." (Ex. 15 of Plas. Amended CSF at p. 9, ECF No. 104-18).

Dr. Fink reviewed the August 2014 report and surmised that based on its analysis, sufficient research existed to conclude that ABA treatment is evidence-based, and therefore may qualify as medically necessary for Medicaid coverage purposes.  (Fink Depo. at 159:14-161:8, Ex. 2 of Plas. Amended CSF).  Dr. Fink began plans to articulate a formal policy that included guidance as to ABA provider certification requirements, Medicaid coverage limits, and who may qualify for coverage of ABA treatment.  (Aug.

26, 2014 E-Mail from Dr. Fink, Ex. 17 of Plas. Amended CSF, ECF No. 104-20).

**The National Centers for Medicare & Medicaid Services Issues Guidance with Respect to ABA Coverage**

In September 2014, the national Centers for Medicare & Medicaid Services issued an informational bulletin that clarified the federal agency's position on ABA treatment.  The bulletin stated that the agency was not mandating ABA treatment, emphasizing that ABA "is one treatment modality for ASD [autism spectrum disorder].  CMS is not endorsing or requiring any particular treatment modality for ASD.  State Medicaid agencies are responsible for determining what services are medically necessary for eligible individuals."  (Ex. 19 of Plas. Amended CSF at p. 1, ECF No. 104-20).

**J.E. Begins ABA Treatment at Easter Seals**

On November 14, 2014, J.E. restarted his ABA treatment. (Egan Decl. at ¶ 35).  He received 15 hours of ABA a week at Easter Seals Hawaii (Pacific Autism Center) ("Easter Seals"). (Id. at ¶ 33).  At that time, Easter Seals was not a Medicaid-authorized provider.  (Id.)  J.E.'s mother paid for his ABA treatment.  (Id. at ¶ 34).

**The Department Prepares to Finalize a Memorandum Adopting a Favorable Position Towards the Coverage of ABA Treatment**

In early December 2014, officials from the Department of Human Services drafted a one-page memorandum that directed health plans to consider covering ABA treatment.  The memorandum was

sent to Dr. Fink for his review.  (Ex. 21 of Plas. Amended CSF at Bates No. DHS 2467, ECF No. 104-24).  On December 8, Dr. Fink sent an e-mail rejecting the draft memorandum.  (<u>Id.</u> at Bates No. DHS 2463).  Dr. Fink explained that the memorandum was "too late for its original intended purpose," and wrote that the Department needed to focus on "finaliz[ing] our guideline[,] which is being issued for consistency and clarity."  (<u>Id.</u>)

On December 18, 2014, the Department of Human Service's Medicaid Medical Director, Dr. Curtis Toma, informed the Medicaid health plans' medical directors that "[p]atients with Autistic Spectrum Disorder can benefit from Applied Behavior Analysis (ABA) therapy.  We are currently working on draft guidance regarding ABA and would appreciate any feedback on your part." (Dec. 18, 2014 E-Mail from Dr. Curtis Toma, Ex. 22 of Plas. Amended CSF, ECF No. 104-25; Fink Depo. at 90:15-91:15, Ex. 2 of Plas. Amended CSF).  The Department's Medicaid Medical Director also indicated that the Department had sought feedback from other state agencies as well.  (Dec. 18, 2014 E-Mail from Dr. Curtis Toma, Ex. 22 of Plas. Amended CSF).

**The Governor of Hawaii's Budget Provides for an Increase of the Department's Funding for Autism-Related Services**

In January 2015, the Governor of Hawaii proposed an increase in the Department's budget for fiscal years 2016 and 2017 by $5.6 million and $5.5 million, respectively.  (Amendments to 2015-2017 Exec. Biennium Budget, Ex. 24 of Plas. Amended CSF, ECF No. 104-27).  The budget increase was meant to account for the expected

14

increase in services for Medicaid recipients with autism,
including ABA treatment.  (<u>Id.</u>; Fink Depo. at 153:14-154:4;
163:12-15, Ex. 2 of Plas. Amended CSF).

**The Department's January 2015 Memorandum**

On January 13, 2015, the Department issued a memorandum to
Medicaid health plans and service providers suggesting that the
Department viewed ABA treatment favorably.  Citing to the August
2014 report by the federal Agency for Healthcare Research and
Quality, the memorandum concluded that ABA treatment is
effective.  (Ex. 12 of Def. Amended CSF at Bates No. DHS 5852,
ECF No. 103-15).  The memorandum provided general instructions as
to how autism treatment claims may be processed.  The memorandum
contained information regarding appropriate billing codes for
autism treatments.  The memorandum did not request any action by
the health plans for notification of patients of the change in
the Department's position.  It stated, "[w]e will be working with
the community to make revisions to this clarification guidance."
(<u>Id.</u> at Bates No. DHS 5854).

**J.E.'s Hiatus with Easter Seals**

In February 2015, J.E.'s mother could not afford to continue
paying for J.E.'s ABA treatment, and removed him from the Easter
Seals program.  (Egan Decl. at ¶ 38).

On approximately July 1, 2015, Easter Seals became a
Medicaid-approved provider.  (Tawata Decl. at ¶ 6, ECF No. 103-
3).

In August 2015, J.E.'s mother re-enrolled him with Easter Seals. (Plas. Ans. to Def. Interrogatories at p. 5, Ex. 10 of Def. Amended CSF; Egan Decl. at ¶ 43). Since August 2015, J.E. has been receiving 35-40 hours of ABA treatment per week. (Egan Decl. at ¶ 44). J.E.'s Medicaid health plan has been paying for the entirety of his ABA treatment.

**The Department's August 28, 2015 Memorandum**

On August 28, 2015, the Department sent a new memorandum to its Medicaid health plans and service providers, replacing the January 13, 2015 memorandum. The memorandum stated that "Hawaii's [Medicaid] health plans must comply with the full range of EPSDT duties and requirements, . . . including ABA [treatment], for children under 21 years of age with [autism], when based on individualized determinations of medical necessity." (Ex. 13 of Def. Amended CSF at p. 1, ECF No. 103-16). The superseding memorandum included four attachments: A, B, C, and D:

Attachment A was a ten-page document that provided detailed information regarding how ABA treatment coverage should be assessed by the Medicaid health plans.

Attachment B was a flow chart that outlined the state's approved process for assessing ABA treatment.

Attachment C was a twelve-page document that delineated the billing codes and rates for autism services, including ABA.

Attachment D was a four-page document that included a sample

claim form and accompanying instructions.

(Id. at attachments A, B, C, D).

**The Second Modification of the Department's Budget**

On December 22, 2015, the state Department of Budget and Finance added $4.9 million to the Department of Human Services's budget for fiscal year 2017. (2017 Exec. Supp. Budget, Ex. 31 of Plas. Amended CSF, ECF No. 104-34). The added amount was designated towards autism-related treatments for Medicaid beneficiaries. (Id.)

There is no evidence that the Department of Human Services has notified or instructed its health plans to inform eligible persons of the Department's reversal on its position as to Applied Behavior Analysis.

<u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."

T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case.  Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory.  Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979).  The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party.  State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).  Opposition evidence may consist

18

of declarations, admissions, evidence obtained through discovery, and matters judicially noticed.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630.  The opposing party cannot rest on mere allegations or denials.  Fed. R. Civ. P. 56(e); Gasaway v. Nw. Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994).  When the non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact. Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993); see also Nat'l Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

## **ANALYSIS**

### I.   **PLAINTIFFS' REQUESTED RELIEF**

42 U.S.C. § 1983 ("Section 1983") provides a private cause of action to enforce a Medicaid beneficiary's right to early and periodic screening, diagnostic and treatment ("EPSDT") services. J.E. v. Wong, 125 F.Supp.3d 1099, 1106 (D. Haw. 2015).  Pursuant to Section 1983, a plaintiff may sue a state official in her official capacity where the plaintiff seeks prospective relief. Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 281 (1997). The doctrine of sovereign immunity pursuant to the Eleventh

Amendment of the United States Constitution precludes a plaintiff from obtaining retrospective relief or damages against the State. Green v. Mansour, 474 U.S. 64, 73 (1985); Lojas v. Washington, 347 F. App'x 288, 290 (9th Cir. 2009).

Here, Plaintiffs J.E. and the Hawaii Disability Rights Center ("the HDRC") seek the following relief:

(1) A declaratory ruling that the State of Hawaii, through the Department of Human Services ("the Department"), violated the Medicaid Act by failing to cover Applied Behavior Analysis ("ABA") treatment pursuant to the EPSDT services mandate;

(2) An injunction:

> (a) ordering the Department to include ABA as a covered treatment under the state Medicaid program for persons eligible for early and periodic screening, diagnostic and treatment ("EPSDT") services;

> (b) compelling the Department to publicize the Medicaid program's coverage of ABA treatment; and

> (c) instructing the Department to submit a State Plan Amendment memorializing a policy that adds ABA treatment as a covered EPSDT benefit.

(Plas. Motion for Summary Jdgmt. at p. 38, ECF No. 100-1).

Plaintiffs' request for declaratory relief is retrospective in nature; it concerns the Department's past conduct regarding a failure to cover ABA under the state's Medicaid program. Absent a waiver from the State, the Court may not impose retrospective

relief pursuant to the Eleventh Amendment.  See Green, 474 U.S. at 73; Mueller v. Auker, No. CIV 04-399-S-BLW, 2010 WL 2265867, at *5 (D. Idaho June 4, 2010).  The State of Hawaii, through the Department, has not waived sovereign immunity rights granted under the Eleventh Amendment.  Plaintiffs may not obtain their requested declaratory relief.


**II.  THE HAWAII DISABILITY RIGHTS CENTER HAS STANDING**

Article III of the United States Constitution requires plaintiffs to have standing for courts to adjudicate their claims.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). An organization has associational standing when "[1] its [constituents] would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  WildEarth Guardians v. U.S. Dep't of Agric., 795 F.3d 1148, 1154 (9th Cir. 2015) (internal quotations omitted) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000)).  The first two prongs of associational standing are constitutional requirements, while the third prong is prudential.  See United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc., 517 U.S. 544, 555-56 (1996).

The HDRC has associational standing in this case. Plaintiffs have produced evidence establishing that (1) at least one of the HDRC's constituents, J.E., would have standing to sue on his own; (2) Medicaid coverage of autism treatments are germane to the HDRC's mission as a Protection and Advocacy organization; and (3) neither the claim asserted nor the relief requested requires the HDRC's constituents to participate in the lawsuit. See Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp., 713 F.3d 1187, 1194 (9th Cir. 2013); (Erteschik Supp. Decl. at ¶¶ 3-18, ECF No. 122-1).

## III. FROM AUGUST 2014 TO AUGUST 2015, THE DEPARTMENT RECOGNIZED THE VALIDITY OF APPLIED BEHAVIOR ANALYSIS TREATMENT, BUT DID NOT IMMEDIATELY IMPLEMENT IT

### A. The Medicaid Program

Congress established Medicaid as a cooperative federal-state program, through which the federal government provides financial aid to states that furnish medical assistance to eligible low-income individuals. See 42 U.S.C. § 1396 et seq.; see also Atkins v. Rivera, 477 U.S. 154, 156-57 (1986).

States are not required to participate in the Medicaid program. Participating states, however, must comply with the requirements of the Medicaid Act, 42 U.S.C. § 1396 et seq., and regulations interpreting the statute. Spry v. Thompson, 487 F.3d 1272, 1273 (9th Cir. 2007). Hawaii is a participating state in the Medicaid program. See Haw. Rev. Stat. §§ 346-7; 346-14.

To qualify for federal funding, a participating state must

22

submit and have approved a "[s]tate plan" for "medical assistance," 42 U.S.C. § 1396a(a), that contains a comprehensive statement describing the nature and scope of the state's Medicaid program.  42 C.F.R. § 430.10.

The Medicaid Act defines "medical assistance" as "payment of part or all of the cost of . . . care and services" included in a list of 29 mandatory and optional categories.  42 U.S.C. § 1396d(a); 42 U.S.C. § 1396a(a)(10)(A).

B.   **The Medicaid Act Requires Participating States to Cover Early and Periodic Screening, Diagnostic, and Treatment Services**

One mandatory category of "medical assistance" concerns "early and periodic screening, diagnostic, and treatment ['EPSDT'] services . . . for individuals who are eligible under the plan and are under the age of 21."  42 U.S.C. § 1396d(a)(4)(B).

If a condition or illness is discovered through EPSDT screening, the EPSDT mandate requires a state's Medicaid program to provide coverage of treatments that "correct or ameliorate defects and physical and mental illnesses and conditions[,] . . . whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(5); Garrido v. Dudek, 731 F.3d 1152, 1154 (11th Cir. 2013).  The level of treatment coverage afforded "must be sufficient in amount, duration, and scope to reasonably achieve its purpose."  42 C.F.R. § 440.230(b).

Congress deliberately crafted an "extremely broad" EPSDT

mandate to ensure that the poorest children and young adults have access to modern medical services.  See Katie A., ex rel. Ludin v. L.A. Cnty., 481 F.3d 1150, 1154 (9th Cir. 2007).  "There is no requirement that an illness or condition must be specifically enumerated in the EPSDT statutes in order to be covered by a state's plan."  Dajour B. v. City of N.Y., No. 00 CIV. 2044 (JGK), 2001 WL 830674, at *8 (S.D.N.Y. July 23, 2001).  The standard for whether an ameliorative or corrective treatment qualifies as an EPSDT service is whether it is medically necessary.  42 U.S.C. § 1396d(r)(5); S.D. v. Hood, No. CIV.A. 02-2164, 2002 WL 31741240, at *4 (E.D. La. Dec. 5, 2002), aff'd sub nom., 391 F.3d 581 (5th Cir. 2004).  If a prescribed treatment is medically necessary to correct or ameliorate an illness or condition, the state Medicaid program must cover it.  Katie A., 481 F.3d at 1154.

Each participating state has the authority to determine which treatments are medically necessary, so long as those restrictions are reasonable and are consistent with the Medicaid Act and its goal "of providing a broad range of health-sustaining services."  Hope Med. Grp. for Women v. Edwards, 63 F.3d 418, 427-28 (5th Cir. 1995); 42 U.S.C. § 1396a(a)(17); 42 C.F.R. § 440.230(d).

The Department of Human Services of the State of Hawaii considers a treatment medically necessary if it (1) is used for a medical condition, (2) is supported by "sufficient evidence" to demonstrate that the treatment can be expected to produce its

intended effects on health outcomes, (3) has beneficial effects on heath outcomes that outweigh expected harmful effects, and (4) is the most cost-effective method available to address the medical condition.  Haw. Admin. R. 1700.1-2.  Evidence is considered sufficient "if it is peer-reviewed, is well-controlled, directly or indirectly relates the intervention to health outcomes, and is reproducible both within and outside of research settings."  Id.

### C.   The Department May Not Exclude a Medically Necessary EPSDT Service

A participating state fails to comply with the EPSDT mandate when it refuses to cover a qualifying EPSDT service.  A state would unlawfully fail to provide coverage of a treatment if:

(1) a prescribed treatment is designed to correct or ameliorate defects, physical or mental illnesses, or conditions discovered through EPSDT screening;

(2) the state, or its Medicaid program, excludes coverage or denied payment of that treatment; and

(3) the state, or its Medicaid program, acted unreasonably when it determined that the prescribed treatment is experimental or otherwise disqualifying.

See K.G. v. Dudek, 839 F.Supp.2d 1254, 1262-63 (S.D. Fla. 2011), *affirmed as to grant of permanent injunction*, Garrido 731 F.3d at 1158-60; S.D., 2002 WL 31741240, at *8 (granting summary judgment in favor of a child who applied for, but was denied, coverage for

25

incontinence supplies).   A prospective plaintiff does not need to exhaust his state administrative remedies before bringing a federal lawsuit alleging a violation of the Medicaid Act.   Okla. Chapter of Am. Acad. of Pediatrics (OKAAP) v. Fogarty, 366 F.Supp.2d 1050, 1102 (N.D. Okla. 2005) (citing cases from the Fourth and Eleventh Circuit Courts of Appeals).

Plaintiffs allege that Applied Behavior Analysis ("ABA") is an effective form of treatment for children and young adults who have autism.

**D.   The Department Delayed Creating and Implementing a Policy for Coverage of ABA Treatment from August 2014 to August 2015**

In August 2014, the Department's Medicaid administrator, Dr. Kenneth Fink ("Dr. Fink"), reviewed a report from the federal Agency for Healthcare Research and Quality regarding ABA.  (Fink Depo. at 159:14-161:8, Ex. 2 of Plas. Amended CSF, ECF No. 104-5; Aug. 2014 Agency for Healthcare Research and Quality Report, Ex. 15 of Plas. Amended CSF, ECF No. 104-18).   The report concluded that ABA was evidence-based and an effective form of treatment for autism.  (Ex. 15 of Plas. Amended CSF at p. 9).   The uncontroverted evidence presented before the Court establishes that the report's analysis convinced Dr. Fink that there was sufficient research to support Medicaid coverage of ABA.  (Fink Depo. at 159:14-161:8, Ex. 2 of Plas. Amended CSF).

Despite the fact that the Department recognized ABA as a

valid form of treatment, Department officials failed to inform the Medicaid health plans that it considered ABA to be effective until January 2015. (Jan. 13, 2015 Department Memo., Ex. 12 of Def. Amended CSF, ECF No. 103-15). The Department did not issue specific instructions concerning processing of ABA claims until August 2015, six months after issuing a formal policy position and twelve months after the Department accepted ABA as a valid form of treatment for autism. (Aug. 28, 2015 Department Memo., Ex. 13 of Def. Amended CSF, ECF No. 103-16).

There was a twelve-month delay between the Department's acceptance of ABA treatment and the promulgation of specific instructions to the Medicaid health plans. The Medicaid Act requires participating states to provide medical assistance "with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). Federal regulations interpreting the Medicaid Act require participating states to "[f]urnish Medicaid promptly to recipients without any delay caused by the agency's administrative procedures." 42 C.F.R. § 435.930(a). A period of twelve months is significant for children whose development depends on effective treatment for the serious condition of autism. Defendant has provided no reasonable explanation as to why the twelve-month delay was necessary.

The Court finds that the Department excluded ABA treatment from Medicaid Coverage from August 2014 to August 2015.

**IV. PLAINTIFFS' CLAIM THAT THE DEPARTMENT CURRENTLY EXCLUDES**

## MEDICAID COVERAGE FOR ABA IS MOOT

A federal court does not have authority to render opinions as to questions that have become moot.  Ctr. For Biological Diversity v. Lohn, 511 F.3d 960, 963 (9th Cir. 2007).  A claim becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000)(internal citations and quotations omitted).

The key inquiry with respect to a mootness issue is whether there can be any effective relief.  W. v. Sec'y of Dep't of Transp., 206 F.3d 920, 925 (9th Cir. 2000).  Without the availability of effective relief, a court's opinion regarding the challenged action would be advisory.  City of Erie, 529 U.S. at 287.  Article III of the United States Constitution forbids federal courts from rendering advisory opinions.  Coal. for a Healthy Cal. v. F.C.C., 87 F.3d 383, 386 (9th Cir. 1996).

Plaintiffs' claim that the Department currently excludes ABA from Medicaid coverage is moot.  Plaintiffs concede that since August 2015, J.E. has been receiving his full dosage of prescribed ABA treatment, and that the treatment is covered by Medicaid.  (Egan Decl. at ¶ 44, ECF No. 104-2).  The evidence presented establishes that the Department presently endorses Medicaid coverage of ABA.  There is no indication that the state Medicaid program excludes or will exclude ABA from coverage.

**A.   The Voluntary Cessation Exception Does Not Preclude a Finding of Mootness**

Plaintiffs argue that their claim is still live, as the Department has voluntarily ceased its practice of excluding ABA treatment.  (Plas. Opp. at pp. 13-16, ECF No. 111).  Plaintiffs' chief objection to a mootness finding is that "there are no assurances that this coverage is permanent."  (Plas. Motion for Summary Jdgmt. at p. 37, ECF No. 100).

The appellate courts have recognized that a defendant's voluntary cessation of a challenged practice may preclude a court from finding the case moot, as doing so may set the defendant "free to return to his old ways."  <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 189 (2000) (internal quotations and citations omitted); <u>Rosebrock v. Mathis</u>, 745 F.3d 963, 971 (9th Cir. 2014), *cert. denied sub nom.*, 135 S. Ct. 1893 (2015).  Voluntary cessation may, however, permit a conclusion that a claim is moot when "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  <u>Rosebrock</u>, 745 F.3d at 971 (quoting <u>Friends of the Earth</u>, 528 U.S. at 189).

**1.   The Department has Changed its Position on Medicaid Coverage of ABA**

The evidence presented shows that in August 2014, the Department began a reexamination of ABA treatment as a medically necessary treatment for autism.

a.   **The Department Began to Take Steps Toward Finding ABA Treatment as Evidence-Based in August 2014**

In August 2014, the federal Agency for Healthcare Research and Quality published a report that described ABA as evidence-based and effective.  (Ex. 15 of Plas. Amended CSF at p. 9, ECF No. 104-18).  The report's analysis convinced Dr. Fink that there was sufficient research to support coverage of ABA.  (Fink Depo. at 159:14-161:8, Ex. 2 of Plas. Amended CSF).  By August 26, 2014, Dr. Fink started plans to articulate a formal Department policy recognizing ABA treatment. (Aug. 26, 2014 E-Mail from Dr. Fink, Ex. 17 of Plas. Amended CSF, ECF No. 104-20).

In early December 2014, officials from the Department drafted a one-page memorandum indicating that health plans should cover ABA treatment under the EPSDT mandate.  (Ex. 21 of Plas. Amended CSF at Bates No. DHS 2467, ECF No. 104-24).  Dr. Fink rejected the draft memorandum, citing the need "to finalize our guideline[,] which is being issued for consistency and clarity." (Id. at Bates No. DHS 2463).

On December 18, 2014, the Department's Medicaid Medical Director informed the health plans' medical directors that "[p]atients with Autistic Spectrum Disorder can benefit from Applied Behavior Analysis (ABA) therapy.  We are currently working on draft guidance regarding ABA and would appreciate any feedback on your part."  (Dec. 18, 2014 E-Mail from Dr. Curtis Toma, Ex. 22 of Plas. Amended CSF, ECF No. 104-25; Fink Depo. at

30

90:15-91:15, Ex. 2 of Plas. Amended CSF).

> **b.  In January 2015, the Governor of Hawaii's Budget Provided for an Increase of the Department's Funding for Autism-Related Services**

In January 2015, the Governor of Hawaii proposed an increase in the Department's budget for fiscal years 2016 and 2017 by $5.6 million and $5.5 million, respectively.  (Amendments to 2015-2017 Exec. Biennium Budget, Ex. 24 of Plas. Amended CSF, ECF No. 104-27).  The budget increase was meant to account for the expected increase in services for Medicaid recipients with autism, including ABA treatment.  (Id.; Fink Depo. at 153:14-154:4; 163:12-15, Ex. 2 of Plas. Amended CSF).

> **c.  On January 13, 2015, the Department Issued a Formal Memorandum to Medicaid Health Plans Indicating Support for ABA**

On January 13, 2015, the Department issued a memorandum to Medicaid health plans and service providers suggesting that the Department viewed ABA treatment favorably.  Citing to the August 2014 report by the Agency for Healthcare Research and Quality, the memorandum concluded that ABA treatment is effective.  (Ex. 12 of Def. Amended CSF at Bates No. DHS 5852, ECF No. 103-15). The Department provided general instructions as to how autism treatment claims may be processed.  The memorandum contained information regarding appropriate billing codes for autism treatments.  The memorandum did not request any action to notify

patients of the change in the Department's position.  It stated,

"[w]e will be working with the community to make revisions to

this clarification guidance."  (Id. at Bates No. DHS 5854).

> **d.    The Department Published a Subsequent
> Superseding Memorandum that Provided Detailed
> Information as to how the Health Plans may
> Process ABA Treatment Claims**

On August 28, 2015, the Department sent a detailed

superseding memorandum to its Medicaid health plans and service

providers.  The memorandum stated that "Hawaii's [Medicaid]

health plans must comply with the full range of EPSDT duties and

requirements, . . . including ABA [treatment], for children under

21 years of age with [autsim], when based on individualized

determinations of medical necessity."  (Ex. 13 of Def. Amended

CSF at p. 1, ECF No. 103-16).  The superseding memorandum

included four attachments, which provided extensive detail

regarding how health plans should approach ABA claims.  (Id. at

Attachments A, B, C, D).

> **e.    The Second Modification of the Department's
> Budget**

On December 22, 2015, the state Department of Budget and

Finance designated an additional $4.9 million to help the

Department cover autism-related treatments for Medicaid for

fiscal year 2017.  (2017 Exec. Supp. Budget, Ex. 31 of Plas.

Amended CSF, ECF No. 104-34).

Defendant has demonstrated that the Department's internal discussions, external communications with the Medicaid health plans, and formal memoranda outlining the Department's acceptance of ABA treatment "[make] it absolutely clear that the allegedly wrongful behavior [cannot] reasonably be expected to recur." Rosebrock, 745 F.3d at 971.

The August 2015 memorandum represents a permanent change in the way the Department views ABA treatment. White v. Lee, 227 F.3d 1214, 1243 (9th Cir. 2000) (Department of Housing and Urban Development policy memorandum was sufficient to show that the agency would not repeat its challenged conduct). The policy announced in the memorandum is "broad in scope and unequivocal in tone," and addresses Plaintiffs' claim that the Department excludes or will exclude ABA treatment from Medicaid coverage. Rosebrock, 745 F.3d at 971 (internal quotations and citation omitted). It has been in place for a significant period of time, and there is no indication that the Department has considered reversing its position on ABA treatment. Id. Defendant posits that the Department "has no intention of terminating its coverage of ABA [treatment] after this lawsuit concludes." (Def. Reply at p. 7, ECF No. 117).

The state government currently shows a favorable disposition towards ABA. In addition to its allocation of approximately $15 million to pay for Medicaid coverage of autism-related services, the state government has also mandated private health insurance plans to cover autism treatments, including ABA. See Haw. Rev.

33

Stat. § 432:1-614 (effective July 1, 2015).

The Ninth Circuit Court of Appeals has recognized that "unlike in the case of a private party, we presume the government is acting in good faith." Am. Cargo Transp., Inc. v. United States, 625 F.3d 1176, 1180 (9th Cir. 2010).

"The mere possibility that a party may suffer future harm is insufficient to preserve a case or controversy; the threat of injury must be 'real and immediate,' not 'conjectural' or 'hypothetical.'" Valdivia v. Brown, 956 F.Supp.2d 1125, 1134-35 (E.D. Cal. 2013) (citing City of L.A. v. Lyons, 461 U.S. 95, 102 (1983)). Plaintiffs seek relief on the basis of present and continuing harm. J.E., however, has been receiving full and uninterrupted treatment by ABA providers since August 2015. There is no evidence that the Department now excludes Medicaid coverage of ABA. The evidence presented establishes that the Department now has policies and procedures that specifically address payment for ABA services. There is no reasonable likelihood that the Department will exclude ABA from Medicaid coverage in the future.

## B.   No State Plan Amendment is Necessary

Plaintiffs argue that the Department must amend its Medicaid State Plan, so that the State Plan specifically mentions ABA as a covered treatment. (Plas. Opp. at pp. 11; 15, ECF No. 111). Plaintiffs do not point to a provision of the Medicaid Act, or its accompanying regulations, that require a State Plan to

34

include *specific* treatments covered by the EPSDT services mandate.  Defendant, in contrast, has presented a communication from the Centers for Medicaid and Medicare Services, which stated that "CMS encourages states *not* to call out a particular model of ASD treatment modalities, such as 'ABA-based therapies'.  We ask states to use more general terms, such as 'Intensive Behavioral Therapies.'" (Ex. 18 of Def. Reply, ECF No. 117-3) (emphasis added).  On June 29, 2015, the Department submitted a State Plan Amendment that references Intensive Behavioral Therapy as a permitted form of treatment for autism.  (Ex. 10 of Plas. Amended CSF in Opp., ECF No. 112-12).  Plaintiffs have not produced evidence indicating that a State Plan Amendment referencing ABA is necessary in this case.

Defendant's Motion for Summary Judgment seeking a declaratory judgment that it has always covered medically necessary autism treatment is **DENIED**.  Defendant did not create and implement a policy of covering ABA treatment until August 2015.

Plaintiffs' claims seeking prospective relief on the basis that the Department may exclude ABA treatment in the future is **DENIED AS MOOT**.  See Get Outdoors II, LLC v. City of Chula Vista, 407 F.Supp.2d 1172, 1180 (S.D. Cal. 2005), *aff'd*, 254 F. App'x 571 (9th Cir. 2007).

**V.    THE DEPARTMENT FAILED TO FULFILL ITS OBLIGATION TO**

**EFFECTIVELY INFORM ELIGIBLE PERSONS OF EPSDT SERVICES**

A.   **The Participating State Must Inform Persons Eligible
     for Early and Periodic Screening, Diagnostic, and
     Treatment Services About the EPSDT Program**

In addition to providing early and periodic screening,
diagnostic, and treatment ("EPSDT") services, a participating
state must also ensure that persons eligible to receive EPSDT
services are informed of the EPSDT program.  The Medicaid Act
provides that the state is responsible for "informing all persons
in the State who are under the age of 21 and who have been
determined to be eligible for medical assistance . . . of the
availability of early and periodic screening, diagnostic, and
treatment services . . . and the need for age-appropriate
immunizations against vaccine-preventable diseases[.]"  42 U.S.C.
§ 1396a(a)(43)(A).

The Court previously ruled that 42 U.S.C. § 1983 provides a
private cause of action to enforce a Medicaid recipient's rights
pursuant to 42 U.S.C. § 1396(a)(43)(A).  (Order Denying
Defendant's Motion to Dismiss Second Amended Complaint, ECF No.
62); J.E. v. Wong, 125 F.Supp.3d 1099, 1104-08 (D. Haw. 2015).

The statutory mandate demands a proactive approach.  A
participating state "is supposed to seek out eligible individuals
and inform them of the benefits of prevention and the health
services and assistance available."  Emily Q. v. Bonta, 208
F.Supp.2d 1078, 1095-96, (C.D. Cal. 2001) (internal citation
omitted).  The objective is to provide beneficiaries with enough

36

information to allow them to determine whether they should obtain

EPSDT services.  John B. v. Menke, 176 F.Supp.2d 786, 802 (M.D.

Tenn. 2001).  Compliance with the mandate is measured in terms of

the state's efforts, not whether a certain number of eligible

beneficiaries actually participate in the EPSDT program.

Fogarty, 366 F.Supp.2d at 1112-13.

The Medicaid Act's outreach obligation is comprised of three

aspects: form, content, and frequency.

### 1.  Form

Federal regulations require participating states to use "a

combination of written and oral methods designed to inform

effectively all EPSDT eligible individuals (or their families)

about the EPSDT program."  42 C.F.R. § 441.56(a)(1).  Examples of

methods that may provide effective outreach include mailed

notices, public service announcements, public presentations, and

community advocacy that addresses the target population.  See

Memisovski ex rel. Memisovski v. Maram, No. 92 C-1982, 2004 WL

1878332, at *49-50 (N.D. Ill. Aug. 23, 2004); CMS, State Medicaid

Manual § 5121, pp. 5-7 (Apr. 1990).  The participating state is

afforded "the flexibility to determine how information may be

given most appropriately while assuring that every EPSDT eligible

receives the basic information necessary to gain access to EPSDT

services."  CMS, State Medicaid Manual at § 5121; Early and

Periodic Screening, Diagnosis, and Treatment (EPSDT) Program, 49

Fed. Reg. 43654-01, *43655 (Oct. 31, 1984).

Communications regarding ESPDT services must be presented in plain terms.  42 C.F.R. § 441.56(a)(2).  To comply with this obligation, the participating state should routinely assess its outreach methods, and may have to change its approach to ensure that the beneficiaries are effectively informed of the EPSDT program.  <u>Maram</u>, 2004 WL 1878332 at *49-50.

### 2.    Content

Communications should apprise eligible persons of the nature of the early and periodic screening, diagnosis, and treatment ("EPSDT") program (including the fact that it is cost-free in most cases), services available under the program, and where and how they may obtain EPSDT services.  42 C.F.R. §441.56(a)(2)(ii); <u>Maher v. White</u>, No. CIV. A. 90-4674, 1992 WL 122912, at *6 (E.D. Pa. June 2, 1992).

Federal law affords some flexibility to state Medicaid programs with respect to the amount and specificity of information they must provide to the beneficiaries.  <u>Emily Q.</u>, 208 F.Supp.2d at 1095.  There is no requirement that a state furnish information regarding every treatment a beneficiary could receive as a result of an EPSDT screening.  See <u>Id.</u>; <u>Hawkins v. Comm'r, N.H. Dep't of Health & Human Servs.</u>, No. 99-CV-143 JD, 2010 WL 2039821, at *4 (D.N.H. May 19, 2010), *aff'd sub nom.*, 665 F.3d 25 (1st Cir. 2012) (rejecting plaintiffs' argument that the state was required to obtain and disseminate information concerning the number of Medicaid openings in each dental

38

provider's office).   The state must, however, provide enough information so that eligible beneficiaries can determine whether they should obtain EPSDT services.   John B., 176 F.Supp.2d at 802; Early and Periodic Screening, Diagnosis, and Treatment (EPSDT) Program, 49 Fed. Reg. 43654-01, *43656 (Oct. 31, 1984).

The Medicaid Act requires the participating state to provide accurate and up-to-date information to EPSDT-eligible persons. Rosie D. v. Romney, 410 F.Supp.2d 18, 27 (D. Mass. 2006).   In accordance with the obligation to proactively inform eligible individuals of EPSDT services, a state Medicaid program has an affirmative duty to correct out-of-date or incorrect information. Id.; Health Care For All, Inc. v. Romney, No. CIV.A. 00-10833RWZ, 2005 WL 1660677, at *13 (D. Mass. July 14, 2005) (finding Massachusetts' Medicaid program in violation of the Medicaid Act for providing incorrect and outdated written literature and customer service information about dental providers).

Where, as here, a Medicaid beneficiary files suit and shows that there is significant and widespread confusion about the Medicaid program's coverage of an EPSDT service, the state is on notice that its outreach efforts are inadequate.   The lawsuit demonstrates that there is a clear need for an update to the contents of the state's communications.

### 3.   Frequency

Federal regulations provide clear instructions regarding when, and how often, a state Medicaid program must disseminate

its EPSDT notices.  The state must provide the relevant
information "within 60 days of the individual's initial Medicaid
eligibility determination and in the case of families which have
not utilized EPSDT services, annually thereafter."  42 C.F.R. §
441.56(a)(4).

**B.    The Department has Failed to Correct Out-of-Date or
        Inaccurate Information it Provided to Medicaid
        Beneficiaries**

Plaintiffs claim that the Department has failed to fulfill
its obligation to ensure that eligible recipients are informed of
"services available under the EPSDT program and where and how to
obtain those services," by failing to announce that Applied
Behavior Analysis ("ABA") treatment is covered by Medicaid.  42
C.F.R. § 441.56(a)(2)(ii).

Defendant demurs by asserting that the Medicaid Act requires
the Department "to simply pass on general information about the
availability of EPSDT as a program to the eligible
beneficiaries."  (Def. Motion for Summary Jdgmt. at pp. 14-15,
ECF No. 98-1).  The Department cites the logistical complexity
associated with notifying its 300,000 Medicaid beneficiaries, and
asserts that in any case, it has contracted the obligation to
provide information about EPSDT services to various third-party
Medicaid health plans, as permitted under the managed care
system.  (<u>Id.</u> at p. 15).

Defendant presented evidence that in January 2015, J.E.

(through his mother) received a "Welcome Kit" from UnitedHealthcare, a Medicaid health plan.  The Welcome Kit included general information about EPSDT services, but did not reference autism-related treatments or provide updates concerning Medicaid coverage.  (Sealed Ex. 4 of Def. Amended CSF at Bates Nos. E000582; E000605; E000684-85).

### 1.   The Department Previously Held an Adverse Position Towards the Coverage of ABA Treatment

Plaintiffs have submitted evidence establishing that in the past, the Department publically announced its opposition to the coverage of ABA.

In January 2013, the State Legislative Reference Bureau reported that Hawaii's Medicaid program did not cover ABA, as the treatment was not considered evidence-based or medically necessary.  That report's conclusion was based on an interview with the Department's Medicaid administrator, Dr. Fink.  (Ex. 6 of Plas. Amended CSF, ECF No. 104-9; Fink Depo. at 148:16-149:8, Ex. 2 of Plas. Amended CSF).

In April 2013, the then-director of the Department, Patricia McManaman ("Director McManaman"), testified before the state legislature in opposition to a state bill that would require health insurers to provide coverage for ABA treatment.  Director McManaman stated that ABA treatment was "not currently covered by the Hawaii Medicaid program."  (Ex. 7 of Plas. Amended CSF at p. 1, ECF No. 104-10).

In March 2014, Director McManaman again presented testimony before the state legislature.  She expressed support "for the intent of the coverage" of ABA, but questioned whether sufficient evidence to support the effectiveness ABA treatment existed at that time.  (Ex. 12 of Plas. Amended CSF at pp. 2-3, ECF No. 104-15).

### 2. The Department Did Not Inform Eligible Persons of its Reversal Concerning the Coverage of ABA Treatment

The evidence presented establishes that since August 2014, the Department has stated it has embarked on adopting a policy that allows for Medicaid coverage of ABA treatment.  (See, e.g., Fink Depo. at 159:14-161:8, Ex. 2 of Plas. Amended CSF; Aug. 26, 2014 E-Mail from Dr. Fink, Ex. 17 of Plas. Amended CSF, ECF No. 104-20; Jan. 13, 2015 Department Memo., Ex. 12 of Def. Amended CSF).  The Department's policy shift culminated in the August 2015 publication of a detailed memorandum concerning Medicaid coverage of ABA.  (Ex. 13 of Def. Amended CSF).  The August 2015 memorandum was forwarded to Medicaid health plans.

There is no indication, however, that the Department has informed persons eligible for EPSDT services about its changed policy as to ABA.  Plaintiffs have produced evidence indicating that eligible Medicaid beneficiaries such as J.E. have "not received pamphlets, information, or heard any public announcements that the [ABA] treatment is officially covered."

(Egan Decl. at ¶ 46; Erteschik Supp. Decl. at ¶ 18).  The Hawaii Disability Rights Center reports that its constituents are unsure as to whether the Medicaid program covers ABA treatment. (Bassett Decl. at ¶ 11, ECF No. 122-4).  Parents who sought ABA treatment for their autistic children before the Department reversed its policy were never informed of the Department's changed position.  (Tachera Decl. at ¶¶ 49-52, ECF No. 122-3).

The Department has failed to uphold its duty to correct out-of-date or inaccurate information previously disseminated to the beneficiaries.  Rosie D., 410 F.Supp.2d at 26-27; Health Care For All, Inc., 2005 WL 1660677 at *13.  Eligible beneficiaries who reasonably relied on the Department's prior public statements that ABA was not covered are still unaware that the Department has since reversed its position on Medicaid coverage of ABA.  The Department's January and August 2015 memoranda, which are technical and directed towards sophisticated healthcare insurers and providers, are inadequate forms of notice.  See Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs., 293 F.3d 472, 481 (8th Cir. 2002) (holding that the state may not "shirk its responsibilities to Medicaid recipients by burying information about available services in a complex bureaucratic scheme").

**3.  The Department Must Update Eligible Beneficiaries of its Policy Covering ABA Treatment Pursuant to the EPSDT Mandate**

The Department must notify persons eligible for EPSDT services of the fact that ABA is now recognized as a covered treatment for autism under the state Medicaid program.  See Emily Q., 208 F.Supp.2d at 1097 (instructing the state to provide notice of therapeutic behavioral services to children on California's Medicaid program).  The notifications must be presented in plain terms, 42 C.F.R. § 441.56(a)(1), and provide sufficient information to allow eligible persons to decide if they should discuss the applicability of ABA treatment with their medical care providers.  See John B., 176 F.Supp.2d at 802.

If the Department elects to delegate the task to the third-party Medicaid health plans, it still has the responsibility to ensure that the health plans' outreach efforts are effective and comply with federal law.  Id. ("The State must assure that the contractors provide adequate outreach efforts").[4]  The oversight responsibility demands an aggressive and proactive approach by the Department.  Katie A., 481 F.3d at 1159; Fogarty, 366 F.Supp.2d at 1112.

Plaintiffs' Motion for Summary Judgment as to the claim that the Department did not fulfill its statutory obligation to

---

[4] The Medicaid Act permits participating states to delegate the provision of medical assistance to third-party entities under a managed care system.  42 U.S.C. § 1396u-2(a).

effectively inform Medicaid beneficiaries of EPSDT services is **GRANTED**.

## CONCLUSION

Between August 2014 and August 2015, the State of Hawaii, Department of Human Services ("the Department") delayed in instructing Medicaid health plans to cover claims for Applied Behavior Analysis ("ABA"), despite the Medicaid Act's early and periodic screening, diagnostic and treatment ("EPSDT") mandate, 42 U.S.C. § 1396 *et seq.*, and despite recognizing ABA treatment's effectiveness and qualification for Medicaid coverage.

Since August 2015, the Department has had a policy and practice of covering ABA as a medically necessary treatment under the state's Medicaid program.  The Department's current policy concerning Medicaid coverage of ABA is permanent.  There is no reasonable likelihood that the Department will reverse its position in the future.

An amendment to the Medicaid State Plan to reflect the Department's position as to ABA is not required.

The Department of Human Services did not fulfill the Medicaid Act's requirement that eligible persons be informed effectively of EPSDT services.  The Department has a duty to correct out-of-date or inaccurate information that it previously disseminated.  The Department must notify persons eligible for EPSDT services of the fact that ABA is now recognized as a

covered treatment for autism under the state Medicaid program.


Plaintiffs J.E., through his parent, Suzanne Egan, and the Hawaii Disability Rights Center's Motion for Summary Judgment (ECF No. 100) is **GRANTED, IN PART, AND DENIED, IN PART**, as follows:

(1)  The Court finds that the Department of Human Services created and implemented a policy to provide coverage for ABA treatment beginning from August 2015. Plaintiff's request for a declaratory ruling stating that the State of Hawaii, through the Department of Human Services, violated the Medicaid Act by failing to cover ABA treatment earlier as retrospective relief is **DENIED** pursuant to the State's sovereign immunity under Eleventh Amendment of the United States Constitution.

(2)  Plaintiffs' request for an injunction ordering the Department to include ABA as a covered treatment under the state Medicaid program for persons eligible for EPSDT services is **DENIED** as moot.

(3)  Plaintiffs' request for an injunction compelling the Department to publicize the Medicaid program's coverage of ABA treatment is **GRANTED**.

(4)  Plaintiffs' request for an injunction instructing the Department to submit a State Plan Amendment memorializing a policy that adds ABA treatment as a

covered EPSDT benefit is **DENIED**.

Defendant Rachael Wong, in her official capacity as Director of the Department of Human Services' Motion for Summary Judgment (ECF No. 98) is **GRANTED, IN PART, AND DENIED, IN PART**, as follows:

(1)    Defendant's request for a declaratory judgment that it has always covered medically necessary autism treatment under Medicaid law is **DENIED**.  The Department delayed creating and implementing a plan to cover ABA treatment until August 2015.

Plaintiffs' claims based on alleged present and continuing harm relating to coverage for ABA treatment are moot.  J.E. has been receiving full and uninterrupted treatment by ABA providers since August 2015.  There is no evidence that the Department now excludes Medicaid coverage of ABA treatment.  There is no reasonable likelihood that the Department will exclude ABA from Medicaid coverage in the future.

(2)    Defendant's request for summary judgment as to Plaintiffs' claim that the Department failed to inform persons eligible for EPSDT services about ABA treatment is **DENIED**.

(3)    Defendant's request for a declaratory judgment that it is not required to submit a State Plan Amendment to the

Centers for Medicare and Medicaid Services that
specifically memorializes coverage for ABA treatment is
**GRANTED**.


**Plaintiffs' Request for Attorneys' Fees and Costs**

Plaintiffs have requested an award of reasonable costs and
attorneys' fees.  42 U.S.C. § 1988 permits the Court to award
reasonable attorneys' fees to the prevailing party of an action
pursuant to 42 U.S.C. § 1983.  42 U.S.C. § 1988(b); Cal. Ass'n of
Rural Health Clinics v. Douglas, No. 2:10 CV-00759 TLN, 2014 WL
5797154, at *2 (E.D. Cal. Nov. 6, 2014) (determining reasonable
attorneys' fees in Medicaid Act action).

The Court finds that Plaintiffs are the prevailing party in
this action, as they achieved a judicially-sanctioned material
alteration of the legal relationship of the parties through this
Court's entry of summary judgment compelling the Department to
publicize the Medicaid program's coverage of ABA treatment.  CRST
Van Expedited, Inc. v. E.E.O.C., 136 S. Ct. 1642, 1646 (2016);
Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health &
Human Res., 532 U.S. 598, 604–06 (2001); Richard S. v. Dep't of
Developmental Servs. of State of Cal., 317 F.3d 1080, 1087 (9th
Cir. 2003).

The Court, in the exercise of its broad discretion, grants
Plaintiffs' request for an award of reasonable costs and
attorneys' fees.  Plaintiffs are entitled to attorneys' fees in

presenting their entire case, even though there are issues that are either unresolved or on which Plaintiffs did not prevail. K.W. v. Armstrong, __ F.Supp.3d __, 2016 WL 1254225, *4-*5 (D. Idaho Mar. 28, 2016).  In a case of this complexity, the Plaintiffs' attorneys' fees were necessarily incurred in developing a complete record, presenting the issues as a whole, seeking various forms of relief, and ultimately succeeding on a significant issue in the litigation which achieves a benefit for the Plaintiffs.  Id.; Dowdell v. Imhof, 2016 WL 737908, *2 (E.D. N.Y. Feb. 23, 2016).  The amount of reasonable attorneys' fees

//

//

//

//

//

//

//

shall be determined in accordance with District of Hawaii Local Rule 54.3.

IT IS SO ORDERED.


DATED:     August 12, 2016, Honolulu, Hawaii.


Helen Gillmor
United States District Judge


J.E., through his parent Suzanne Egan, for themselves and on behalf of a class of those similarly situated; and the Hawaii Disability Rights Center, in a representative capacity on behalf of its clients and all others similarly situated v. Rachael Wong, in her official capacity as Director of the State of Hawaii, Department of Human Services; Civil No. 14-00399 HG-KJM; **ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF No. 100) and GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 98).**